UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

FILED
US BANKRUPTCY COURT
2023 JUN 26  P 4: 33
POUGHKEEPSIE, NY

IN RE

CHAPTER 13

EMANUEL ARCHIBALD

CASE NO. 23-35251

CHIEF JUDGE: Cecelia G. Morris

DEBTOR

## <u>OBJECTION TO PROOF OF CLAIM NO.1-1</u>

**COMES NOW,** the debtor **EMANUEL ARCHIBALD** submitting this motion in

support of my objection to Proof of Claim 1-1 filed June 7, 2023, by Nationstar.

Mortgage, LLC d/b/a Mr. Cooper as servicer for the Wells Fargo Bank,

Association successor by merger to Wells Fargo Bank Minnesota National

Association (formally known as Northwest Bank Minnesota National Association)

not in its individual or banking capacity but solely in its capacity as Trustee for the

Merrill Lynch Mortgage Investors Trust Series 2005-H3 ("Secured Creditor")

in the above captioned Bankruptcy case, on the grounds that the claim is time.

barred Pursuant 11 U.S.C. sec. 502(b)(1), 11 U.S.C. 558, U.C.C. sec. 3-118,

New York CPLR sec.213(4) and CPLR 203.

Attached hearing are the following Exhibits in support of this Objection:

**Exhibit A**: Copy of "Secured Creditors" claim filed in this Bankruptcy Case.

**Exhibit B:** Copy of the Mortgage Agreement dated June 5, 2005

**Exhibit C:** Copy of the correspondence dated March 25, 2008, indicating the alleged default date of the Mortgage Debt.

**Exhibit D:** Copy of the Foreclosure Summons and Complaint dated August 26, 2008 accelerating the entire mortgage debt.

**Exhibit E:** Copy of Relevant United States Supreme Court case, Midland Funding, LLC v Johnson (2017)

**RELEVANT FACTS:**

1. Emanuel Archibald filed for Bankruptcy on March 30, 2023, under Chapter 13.

2. "Secured Creditor" filed a claim seeking to recover on an Eighteen-year (18) Mortgage Debt in the amount of 1,438,587.75 (Exhibit A)

3. The Debt in question is over 18 years old, which is well beyond the six-year statute of limitation for contracts under New York State law (Exhibit E)

4. Pursuant to 11 U.S.C. sec. 502(b)(1) A claim may be disallowed it is if it is unenforceable under the Applicable Law.

5. Pursuant to 11 U.S.C. sec. 558 a claim may be disallowed if it is barred by a statute of limitations that expired before the commencement of the Bankruptcy case.

6. Pursuant to the Uniform Commercial Code, U.C.C sec. 3-118 an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or if a due date is accelerated within six years after the acceleration due date.

7. Pursuant to CPLR sec.213(4) provides for a six (6) year statute of limitations for the enforcement of contracts.

8. Pursuant to CPLR 203, the statue begins to be computed from when the time the action arises.

9. The Mortgage Contract in this case was signed by Debtor Emanuel Archibald and non-debtor, Yvonne Moody (husband and wife) on June 16, 2005. (Exhibit B)

10. A mortgage default letter was mailed to debtor Emanuel Archibald and non-debtor Yvonne Moody (Husband and Wife), c/o of Attorney Simon Haysom dated March 25, 2008 (Exhibit C)

11. On August 26, 2008, a Mortgage Foreclosure Summons and Complaint was filed and served upon debtor Emanuel Archibald and non-debtor Yvonne Moody (Husband and Wife) (Exhibit D)

## The Running of the Debt Clock

12. First and foremost, I write this objection as a pro se debtor in the above captioned Bankruptcy Case, I respectfully request the Court's understanding and consideration in applying the ruling of the Supreme Court case ***Haines v Kerner, 404 U.S., 519 (1972)*** to my circumstances.

13. In accordance with Haines v Kerner, which holds that the pleadings of pro se litigants should be held to less stringent standards than those drafted by lawyers, I request that the court interpret my pleadings liberally. Although I am doing my utmost to understand and adhere to the courts procedures, my lack of legal training may result in inadvertent errors or omissions.

14. I am currently objecting to a claim filed in my case. I understand the seriousness of this objection and its potential impact on my bankruptcy proceedings. I have made every effort to research and understand the law in this area, and I believe my objection is valid and should be considered.

15. Given my pro se status and the Haines v Kerner ruling, I kindly request the court's patience and understanding as I navigate this process.

16. Additionally I respectfully move the court to take judicial notice of the United States Supreme Court case ***Midland Funding, LLC v Johnson (2017)*** Attached herein as Exhibit E

17. It is common knowledge in New York that the statute of limitations to collect a debt is six (6) years from the time of acceleration.

18. In the Supreme Court case, <u>Midland Funding, LLC v Johnson, (2017)</u> Justice Sotomayor in our dissenting opinion stated, in part, "As a wide variety of courts and commentators have observed, debt buyers have deluge [d] the bankruptcy courts with claims "on debts deemed unenforceable under state statute of limitations. *Crawford v LVNV Funding, LLC, 758 F. 3d 1254, 1256 (CA11 2014) also In Jenkins, 456 B.R.236, 239, n. 2 (Bkrtcy. Ct. EDNC 2011)* (noting a "plague" of stale claims") Brief for National Association of Consumer Bankruptcy Attorneys et al, as Amicus Curiae 9 (notice study describing "hundreds of thousands of proof of claims asserting hundreds of millions of dollars in consumer indebtedness in a single year") This practice has become so widespread that the government sued one debt buyer last year "to address [its] systematic abuse of the bankruptcy process"- including a "business model of "knowingly and strategically" filing thousands of claims for time barred debt. Complaint in *In re Freeman-Clay v Resurgent Capital servs., L.P. No. 14 -41871(Bkrtcy. Ct. WD Mo.)* (Resurgent Complaint) This practice, the Government explained, "manipulates the bankruptcy process by systematically shifting the burden" to trustees and debtors to object even to "frivolous claims" --especially given that filing an objection is costly, time consuming and easy to overlook *Id 35, 43 to 44*

19. The Supreme Court Justice continues, "As in ordinary civil cases, a debtor in a Chapter 13 bankruptcy proceeding is entitled to have dismissed any claim filed under his estate that is barred by the statute of limitations. *See 11 U.S.C sec.558.* As in ordinary civil cases, the statute of limitations is an affirmative defense, one that must be raised by either the debtor or the trustee of his estate before it is honored *sec.502, 558* and so- just as in ordinary civil cases - debt collectors may file claims in bankruptcy proceedings for stale debts and hope that no one notices they are too old to be enforced."

20. Continuing her dissent, "Statute of limitations are not simply technicalities, *Board of Regents of Univ.of State of New York v Tomanio, 446 U.S. 478, 482(1980).* They reflect a strong public policy determination that "it is unjust to fail to put (an) adversary on notice to defend within a specified period of time." *United States v Kubricks, 444 U.S. 111, 117 (1979)*

21. In this case the Foreclosure action was filed on August 26, 2008, which indisputably establishes that the Note and Mortgage were accelerated, and the total indebtedness became immediately due and payable, as a result the entire indebtedness became time barred six years after the loan was accelerated.

22. More specifically in this Case, Chapters 9 and 10 of the Mortgage reads, as follows:

*9. Pursuant to the terms of the instruments, notice of default has been duly given to*

*the Defendants if required and the period to cure, if any, has elapsed and by*

*reason thereof Plaintiff has elected and hereby elects to declare immediately due*

*and payable the entire unpaid balance of principle*

*10. That the balance of principal due upon said note and mortgage as of the date*

*of said default and as of the date of this complaint is $503,400.00 plus interest*

*from February 1, 2007.*

23. The statute of limitations period for enforcing this mortgage debt would then

have expired on August 27, 2014, six years and one day after the mortgage was

accelerated, rendering the contract debt time-barred, and unenforceable.

24. But for the fact, that the time was "tolled" by four hundred and sixty-two (462)

days due to the filing by debtor Emanuel Archibald of a Chapter 13 Bankruptcy

Case No. 09 -35228 on February 9, 2009, with a dismissal date of May 14, 2010.

25. This Tolling would then extend the time barred date from August 27, 2014, to

December 2, 2015. which is seven (7) plus years and/or some Two Thousand

Seven Hundred and twenty-five (2,725) and counting days, beyond enforceability.

26. For that reason, I am requesting that the Court sanction the "Secured Creditor"

for filing a knowingly time-barred claim. Rule 11 of the Federal Rules of Civil

Procedure and the New York State Rules of Court provide for sanctions. against parties who file frivolous or legally meritless claims. It is apparent that "Secured Creditor" was aware or should have been aware of the statute of limitations issue, yet they proceeded to file a time-barred claim in violation of these rules. Such conduct is an abuse of the judicial process and warrants the imposition of sanctions.

**WHEREFORE,** I respectfully request that the Court disallow this. Claim as time-barred and impose appropriate sanctions against "Secured Creditor" for filing a knowingly time-barred claim and for such further relief as may be just and proper.

Dated: June 26, 2023

Sincerely,

Emanuel Archibald

Pro Se Debtor
117 Brigadoon Blvd
Highland Mills, New York 10930
(845)742-8908

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

IN RE

EMANUEL ARCHIBALD

DEBTOR

CHAPTER 13

CASE NO. 23-35251cgm

CHIEF JUDGE: Cecelia G. Morris

## **VERIFICATION OF MOTION**

State of New York
County of Orange

Before me personally appeared EMANUEL ARCHIBALD who, being by me first duly sworn and
identified in accordance with New York State law, the poses and says.

1. My name is EMANUEL ARCHIBALD, Chapter 13 debtor herein

2. I have read and understood the attached for going motion filed herein, and each fact

   alleged therein is true and correct of my own personal knowledge.


FURTHER THE AFFIANT SAYETH NAUGHT.


Orange County New York
Dated: June 26, 2023

Emanuel Archibald, Affiant

Sworn To and subscribed before me this 26th day of JUNE 2023

Notary public

NICOLE YOUNG
Notary Public, State of New York
No. 01YO6438927
Qualified in Orange County
Commission Expires Aug. 22, 2024

My Commission expires. August 22. 2026

EXHIBIT A

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case</strong></td></tr>
<tr><td colspan="2">Debtor 1  Emanuel Archibald</td></tr>
<tr><td colspan="2">Debtor 2<br>(Spouse, if filing)</td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the: Southern District of New York</td></tr>
<tr><td colspan="2">Case number  23-35251-cgm</td></tr>
</table>

## Official Form 410
## Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association (formerly known as Norwest Bank Minnesota, National Association), not in its individual or banking capacity, but solely in its capacity as Trustee for the Merrill Lynch Mortgage Investors Trust, Series 2005-HE3
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Nationstar Mortgage LLC ATTN: BK Department
Name

P.O. Box 619096
Number    Street

Dallas       TX      75261-9741
City       State      ZIP Code

Contact phone 877-343-5602

Contact Email: _____

Where should payments to the creditor be sent?

Nationstar Mortgage LLC ATTN: BK Department
Name

P.O. Box 619094
Number    Street

Dallas       TX      75261-9741
City       State      ZIP Code

Contact phone 877-343-5602

Contact Email: _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims (if known) _____     Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>5667</u>

---

**7. How much is the claim?**    $<u>1,438,587.75</u>

Does this amount include interest or other charges?

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A)

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Money Loaned</u>

---

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.*
**117 Brigadoon Boulevard, Highland Mills, New York 10930**
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**  <u>Recorded Mortgage on Real Property</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $<u>1,438,587.75</u>

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** <u>$1,039,119.37</u>

**Annual Interest Rate** (when case was filed) <u>8.2000</u>%
☐ Fixed
☒ Variable

---

**10. Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.C.C. § 507(a)<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | ☒ No<br><br>☐ Yes. Check all that apply: | Amount entitled to priority |
|---|---|---|---|
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it.**
**FRBP 9011(b)**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/07/2023
                                MM / DD / YYYY

/s/ Courtney R. Shed
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Courtney | R. | Shed, Esq |
|---|---|---|---|
| | First name | Middle name | Last name |

Title ____ Attorneys for Creditor _____

Company ____ Gross Polowy, LLC _____
                   Identify the corporate servicer as the company if the authorized agent is a servicer.

Address ____ 1775 Wehrle Drive, Suite 100 _____
                   Number                Street

____ Williamsville        New York          14221 _____
          City                      State              ZIP Code

Contact phone  (716) 204-1700        Email  POCinquiries@grosspolowy.com

---

## Mortgage Proof of Claim Attachment                                                                (12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 23-35251-cgm Emanuel | Principal balance: | $503,400.00 | Principal & interest due: | $657,739.98 | Principal & interest: | $3,733.90 |
| Debtor 1: | Archibald | Interest due: | $562,759.25 | Prepetition fees due: | $42,901.17 | Monthly escrow: | $1,658.85 |
| Debtor 2: | | Fees, costs due: | $42,901.17 | Escrow deficiency for funds advanced: | $329,527.33 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 5667 | Escrow deficiency for funds advanced: | $329,527.33 | Projected escrow shortage: | $8,950.89 | Total monthly payment: | $5,392.75 |
| Creditor: | * | Less total funds on hand: | -$0.00 | Less funds on hand: | -$0.00 | | |
| Servicer: | Nationstar Mortgage LLC | Total debt: | $1,439,587.75 | Total prepetition arrearage: | $1,039,119.37 | | |
| Fixed accrual/daily | | | | | | | |
| Simple interest/other | Other | | | | | | |

* Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association (formerly known as Norwest Bank Minnesota, National Association), not in its individual or banking capacity, but solely in its capacity as Trustee for the Merrill Lynch Mortgage Investors Trust, Series 2005-HE3

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| | | | | | Starting Balances | | | | | | | | | | | |

**Mortgage Proof of Claim Attachment: Additional Page**                                    **(12/15)**

Nationstar Mortgage LLC services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of " Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association (formerly known as Norwest Bank Minnesota, National Association), not in its individual or banking capacity, but solely in its capacity as Trustee for the Merrill Lynch Mortgage Investors Trust, Series 2005-HE3".

Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

Official Form 410A                                    Mortgage Proof of Claim Attachment

Part 3: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/1/2007 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 2,600.90 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 4/1/2007 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 5,201.80 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 5/1/2007 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 7,802.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 6/1/2007 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 10,403.60 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 7/1/2007 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 13,004.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 8/1/2007 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 16,863.90 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 9/1/2007 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 20,723.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 10/1/2007 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 24,582.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 11/1/2007 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 28,442.10 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 12/1/2007 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 32,301.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 1/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 36,160.90 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 2/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 40,439.80 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 3/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 44,718.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 4/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 48,997.60 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 5/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 53,276.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 6/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 57,555.40 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 7/1/2008 | $ 4,278.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 61,834.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 8/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 65,693.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 9/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 69,553.10 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 10/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 73,412.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 11/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 77,271.90 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 12/1/2008 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 81,131.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 1/1/2009 | $ 3,859.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 84,990.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 2/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 88,430.60 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 3/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 91,870.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 4/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 95,310.40 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 5/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 98,750.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 6/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 102,190.20 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 7/1/2009 | $ 3,439.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 105,630.10 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 8/1/2009 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 108,650.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 9/1/2009 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 111,670.90 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 10/1/2009 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 114,691.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 11/1/2009 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 117,711.70 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 12/1/2009 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 120,732.10 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 1/1/2010 | $ 3,020.40 | | | Delinquent P & I Payment due | 3/1/2007 | $ 123,752.50 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 2/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 126,353.40 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 3/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 128,954.30 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 4/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 131,555.20 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 5/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 134,156.10 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 6/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 136,757.00 | | | | | $ - | $ 503,400.00 | $ - | $ (33,935.39) | $ - | $ 208.20 |
| 6/24/2010 | | | | City Tax Disbursed | 3/1/2007 | $ 136,757.00 | | | $ (329.64) | | $ - | $ 503,400.00 | $ - | $ (34,265.03) | $ - | $ 208.20 |
| 6/25/2010 | | | | Escrow Disbursed | 3/1/2007 | $ 136,757.00 | | | $ (1,140.34) | | $ - | $ 503,400.00 | $ - | $ (35,405.37) | $ - | $ 208.20 |
| 7/1/2010 | $ 2,600.90 | | | Delinquent P & I Payment due | 3/1/2007 | $ 139,357.90 | | | | | $ - | $ 503,400.00 | $ - | $ (35,405.37) | $ - | $ 208.20 |
| 8/1/2010 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 142,663.13 | | | | | $ - | $ 503,400.00 | $ - | $ (35,405.37) | $ - | $ 208.20 |
| 9/1/2010 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 145,968.36 | | | | | $ - | $ 503,400.00 | $ - | $ (35,405.37) | $ - | $ 208.20 |
| 9/20/2010 | | | | SCHOOL TAX DISBURSED | 3/1/2007 | $ 145,968.36 | | | $ (9,698.96) | | $ - | $ 503,400.00 | $ - | $ (45,082.36) | $ - | $ 208.20 |
| 10/1/2010 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 149,273.59 | | | | | $ - | $ 503,400.00 | $ - | $ (45,082.36) | $ - | $ 208.20 |
| 11/1/2010 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 152,578.82 | | | | | $ - | $ 503,400.00 | $ - | $ (45,082.36) | $ - | $ 208.20 |
| 12/1/2010 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 155,884.05 | | | | | $ - | $ 503,400.00 | $ - | $ (45,082.36) | $ - | $ 208.20 |
| 1/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 159,189.28 | | | | | $ - | $ 503,400.00 | $ - | $ (45,082.36) | $ - | $ 208.20 |
| 1/25/2011 | | | | City Tax Disbursed | 3/1/2007 | $ 159,189.28 | | | $ (4,753.42) | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 2/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 162,494.51 | | | | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 3/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 165,799.74 | | | | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 4/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 169,104.97 | | | | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 5/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 172,410.20 | | | | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 6/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 175,715.43 | | | | | $ - | $ 503,400.00 | $ - | $ (49,847.78) | $ - | $ 208.20 |
| 6/24/2011 | | | | City Tax Disbursed | 3/1/2007 | $ 175,715.43 | | | $ (481.71) | | $ - | $ 503,400.00 | $ - | $ (100,329.49) | $ - | $ 208.20 |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 179,020.88 | | | | | $ - | $ 503,400.00 | $ - | $(100,329.48) | $ - | $ 208.20 |
| 7/7/2011 | $ 208.20 | | | MISC ADJ | 3/1/2007 | $ 179,020.88 | | | $ 208.20 | | $ (208.20) | $ 503,400.00 | $ - | $(100,121.29) | $ - | $ - |
| 8/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 182,325.89 | | | | | $ - | $ 503,400.00 | $ - | $(100,121.29) | $ - | $ - |
| 9/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 185,631.12 | | | | | $ - | $ 503,400.00 | $ - | $(100,121.29) | $ - | $ - |
| 9/15/2011 | | | | SCHOOL TAX DISBURSED | 3/1/2007 | $ 185,631.12 | | | $ (10,036.58) | | $ - | $ 503,400.00 | $ - | $(110,157.87) | $ - | $ - |
| 10/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 188,936.35 | | | | | $ - | $ 503,400.00 | $ - | $(110,157.87) | $ - | $ - |
| 11/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 192,241.58 | | | | | $ - | $ 503,400.00 | $ - | $(110,157.87) | $ - | $ - |
| 12/1/2011 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 195,546.81 | | | | | $ - | $ 503,400.00 | $ - | $(110,157.87) | $ - | $ - |
| 1/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 198,852.04 | | | | | $ - | $ 503,400.00 | $ - | $(110,157.87) | $ - | $ - |
| 1/13/2012 | | | | City Tax Disbursed | 3/1/2007 | $ 198,852.04 | | | $ (4,899.95) | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 2/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 202,157.27 | | | | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 3/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 205,462.50 | | | | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 4/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 208,767.73 | | | | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 5/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 212,072.96 | | | | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 6/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 215,378.19 | | | | | $ - | $ 503,400.00 | $ - | $(115,057.82) | $ - | $ - |
| 6/22/2012 | | | | City Tax Disbursed | 3/1/2007 | $ 215,378.19 | | | $ (608.00) | | $ - | $ 503,400.00 | $ - | $(115,666.00) | $ - | $ - |
| 7/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 218,683.42 | | | | | $ - | $ 503,400.00 | $ - | $(115,666.00) | $ - | $ - |
| 8/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 221,988.65 | | | | | $ - | $ 503,400.00 | $ - | $(115,666.00) | $ - | $ - |
| 9/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 225,293.88 | | | | | $ - | $ 503,400.00 | $ - | $(115,666.00) | $ - | $ - |
| 9/13/2012 | | | | SCHOOL TAX DISBURSED | 3/1/2007 | $ 225,293.88 | | | $ (10,034.31) | | $ - | $ 503,400.00 | $ - | $(125,700.31) | $ - | $ - |
| 10/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 228,599.11 | | | | | $ - | $ 503,400.00 | $ - | $(125,700.31) | $ - | $ - |
| 11/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 231,904.34 | | | | | $ - | $ 503,400.00 | $ - | $(125,700.31) | $ - | $ - |
| 12/1/2012 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 235,209.57 | | | | | $ - | $ 503,400.00 | $ - | $(125,700.31) | $ - | $ - |
| 12/13/2012 | | | | Escrow Deposit | 3/1/2007 | $ 235,209.57 | | | $ 50,000.00 | | $ - | $ 503,400.00 | $ - | $ (75,700.31) | $ - | $ - |
| 1/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 238,514.80 | | | | | $ - | $ 503,400.00 | $ - | $ (75,700.31) | $ - | $ - |
| 1/18/2013 | | | | City Tax Disbursed | 3/1/2007 | $ 238,514.80 | | | $ (5,012.39) | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 2/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 241,820.04 | | | | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 3/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 245,125.28 | | | | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 4/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 248,430.52 | | | | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 5/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 251,735.76 | | | | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 6/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 255,041.00 | | | | | $ - | $ 503,400.00 | $ - | $ (80,712.70) | $ - | $ - |
| 6/13/2013 | | | | village tax Disbursed | 3/1/2007 | $ 255,041.00 | | | $ (2,490.80) | | $ - | $ 503,400.00 | $ - | $ (83,203.50) | $ - | $ - |
| 7/1/2013 | $ 3,305.24 | | | Delinquent P & I Payment due | 3/1/2007 | $ 258,346.24 | | | | | $ - | $ 503,400.00 | $ - | $ (83,203.50) | $ - | $ - |
| 8/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 261,651.47 | | | | | $ - | $ 503,400.00 | $ - | $ (83,203.50) | $ - | $ - |
| 9/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 264,956.70 | | | | | $ - | $ 503,400.00 | $ - | $ (83,203.50) | $ - | $ - |
| 9/20/2013 | | | | SCHOOL TAX DISBURSED | 3/1/2007 | $ 264,956.70 | | | $ (10,439.73) | | $ - | $ 503,400.00 | $ - | $ (93,643.23) | $ - | $ - |
| 10/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 268,261.93 | | | | | $ - | $ 503,400.00 | $ - | $ (93,643.23) | $ - | $ - |
| 11/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 271,567.16 | | | | | $ - | $ 503,400.00 | $ - | $ (93,643.23) | $ - | $ - |
| 12/1/2013 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 274,872.39 | | | | | $ - | $ 503,400.00 | $ - | $ (93,643.23) | $ - | $ - |
| 1/1/2014 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 278,177.62 | | | | | $ - | $ 503,400.00 | $ - | $ (93,643.23) | $ - | $ - |
| 1/15/2014 | | | | City Tax Disbursed | 3/1/2007 | $ 278,177.62 | | | $ (5,333.16) | | $ - | $ 503,400.00 | $ - | $ (98,976.39) | $ - | $ - |
| 1/23/2014 | | | | Escrow Disbursed | 3/1/2007 | $ 278,177.62 | | | $ (50,000.00) | | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ - | $ - |
| 2/1/2014 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 281,482.85 | | | | | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ - | $ - |
| 3/1/2014 | $ 3,305.23 | | | Delinquent P & I Payment due | 3/1/2007 | $ 284,788.08 | | | | | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ - | $ - |
| 4/1/2014 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment due | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ - | $ - |
| 4/4/2014 | $ - | $ - | $ 70,000.00 | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 70,000.00 | $ - |
| 4/4/2014 | $ - | $ - | $ 8,876.39 | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 78,876.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 7,240.00 | Previous Servicer | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 86,116.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 1,056.00 | Previous Servicer | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 87,172.39 | $ - |
| 4/9/2014 | $ - | $ - | $ (8,296.00) | Previous Servicer | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 78,876.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 256.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 79,132.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 600.00 | Foreclosure Fee | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 79,932.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 50,000.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 129,932.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 129,947.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 89.00 | BPO Costs | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 130,036.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 130,051.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 130,066.39 | $ - |
| 4/9/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(148,976.39) | $ 130,081.39 | $ - |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued Interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/6/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (148,875.30) | $ 130,065.39 | $ - |
| 4/8/2014 | $ - | $ - | $ (50,000.00) | Previous Servicer | 3/1/2007 | $ 288,093.31 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (148,875.30) | $ 80,065.39 | $ - |
| 5/1/2014 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 291,398.54 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (148,875.30) | $ 80,065.39 | $ - |
| 5/22/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 291,398.54 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (148,875.30) | $ 80,111.39 | $ - |
| 6/1/2014 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 294,703.77 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (148,875.30) | $ 80,111.39 | $ - |
| 6/19/2014 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 294,703.77 | $ - | $ - | $ (4,229.00) | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,111.39 | $ - |
| 6/19/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 294,703.77 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,126.39 | $ - |
| 7/1/2014 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 298,009.00 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,126.39 | $ - |
| 7/15/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 298,009.00 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,141.39 | $ - |
| 7/25/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 298,009.00 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,156.39 | $ - |
| 8/1/2014 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 301,314.24 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,156.39 | $ - |
| 8/20/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 301,314.24 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,171.39 | $ - |
| 9/1/2014 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 304,619.48 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (153,105.30) | $ 80,171.39 | $ - |
| 9/15/2014 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 304,619.48 | $ - | $ - | $ (10,226.31) | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 80,171.39 | $ - |
| 9/19/2014 | $ - | $ - | $ 16,083.37 | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 304,619.48 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,254.76 | $ - |
| 9/30/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 304,619.48 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,249.76 | $ - |
| 10/1/2014 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 307,924.72 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,249.76 | $ - |
| 10/17/2014 | $ - | $ - | $ 75.00 | Filing Costs | 3/1/2007 | $ 307,924.72 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,324.76 | $ - |
| 10/23/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 307,924.72 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,339.76 | $ - |
| 11/1/2014 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 311,229.96 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,339.76 | $ - |
| 11/19/2014 | $ - | $ - | $ 95.00 | Filing Costs | 3/1/2007 | $ 311,229.96 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,434.76 | $ - |
| 12/1/2014 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 314,535.20 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,434.76 | $ - |
| 12/17/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 314,535.20 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,449.76 | $ - |
| 12/17/2014 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 314,535.20 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,464.76 | $ - |
| 1/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 317,840.44 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,464.76 | $ - |
| 1/8/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 317,840.44 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,479.76 | $ - |
| 2/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 321,145.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,479.76 | $ - |
| 2/4/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 321,145.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,494.76 | $ - |
| 2/26/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 321,145.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,509.76 | $ - |
| 3/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 324,450.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 96,509.76 | $ - |
| 3/13/2015 | $ - | $ - | $ 1,750.00 | Foreclosure Fee | 3/1/2007 | $ 324,450.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 98,259.76 | $ - |
| 3/23/2015 | $ - | $ - | $ (30.00) | Property Inspection | 3/1/2007 | $ 324,450.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 98,229.76 | $ - |
| 3/27/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 324,450.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 98,244.76 | $ - |
| 4/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 327,756.16 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (163,331.70) | $ 98,244.76 | $ - |
| 4/8/2015 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 327,756.16 | $ - | $ - | $ (3,249.00) | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,244.76 | $ - |
| 4/17/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 327,756.16 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,259.76 | $ - |
| 5/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 331,061.40 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,259.76 | $ - |
| 5/11/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 331,061.40 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,274.76 | $ - |
| 5/22/2015 | $ - | $ - | $ 350.00 | Foreclosure Fee | 3/1/2007 | $ 331,061.40 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,624.76 | $ - |
| 6/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,624.76 | $ - |
| 6/3/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,639.76 | $ - |
| 6/8/2015 | $ - | $ - | $ 45.00 | Filing Costs | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 98,684.76 | $ - |
| 6/8/2015 | $ - | $ - | $ 1,750.00 | Foreclosure Fee | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (166,580.70) | $ 100,434.76 | $ - |
| 6/17/2015 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ (1,761.00) | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 100,434.76 | $ - |
| 6/26/2015 | $ - | $ - | $ 645.00 | Foreclosure Fee | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 101,079.76 | $ - |
| 7/1/2015 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 334,366.64 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 101,294.76 | $ - |
| 7/1/2015 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 101,294.76 | $ - |
| 7/13/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 101,309.76 | $ - |
| 7/16/2015 | $ - | $ - | $ 1,720.00 | Foreclosure Fee | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 103,029.76 | $ - |
| 7/17/2015 | $ - | $ - | $ 845.00 | Foreclosure Fee | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 103,874.76 | $ - |
| 7/27/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.70) | $ 103,889.76 | $ - |
| 7/28/2015 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 103,874.76 | $ - |
| 7/28/2015 | $ - | $ - | $ 2,150.00 | Foreclosure Fee | 3/1/2007 | $ 337,671.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 106,024.76 | $ - |
| 8/1/2015 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 106,024.76 | $ - |
| 8/5/2015 | $ - | $ - | $ 1,290.00 | Foreclosure Fee | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 107,314.76 | $ - |
| 8/5/2015 | $ - | $ - | $ 250.00 | Filing Costs | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 107,564.76 | $ - |
| 8/5/2015 | $ - | $ - | $ 50.00 | Filing Costs | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 107,614.76 | $ - |
| 8/13/2015 | $ - | $ - | $ 190.00 | Foreclosure Fee | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 107,804.76 | $ - |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount or fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/14/2015 | $ - | $ - | $ 430.00 | Foreclosure Fee | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 108,034.78 | $ - |
| 6/19/2015 | $ - | $ - | $ 2,150.00 | Foreclosure Fee | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 110,184.78 | $ - |
| 6/20/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 110,199.78 | $ - |
| 6/24/2015 | $ - | $ - | $ 1,720.00 | Foreclosure Fee | 3/1/2007 | $ 340,977.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 111,819.78 | $ - |
| 9/1/2015 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 344,282.34 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 111,819.78 | $ - |
| 9/4/2015 | $ - | $ - | $ 50.00 | Filing Costs | 3/1/2007 | $ 344,282.34 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 111,869.78 | $ - |
| 9/17/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 344,282.34 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (168,341.72) | $ 111,884.78 | $ - |
| 9/21/2015 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 344,282.34 | $ - | $ - | $ (10,585.15) | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 111,884.78 | $ - |
| 9/29/2015 | $ - | $ - | $ 20,757.01 | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 344,282.34 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 132,741.77 | $ - |
| 10/1/2015 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 347,587.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 132,741.77 | $ - |
| 10/23/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 347,587.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 132,756.77 | $ - |
| 11/1/2015 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 350,892.80 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 132,756.77 | $ - |
| 11/6/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 350,892.80 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (178,929.87) | $ 132,771.77 | $ - |
| 11/19/2015 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 350,892.80 | $ - | $ - | $ (5,158.94) | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 132,771.77 | $ - |
| 11/27/2015 | $ - | $ - | $ 1,290.00 | Foreclosure Fee | 3/1/2007 | $ 350,892.80 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 134,061.77 | $ - |
| 12/1/2015 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 354,198.03 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 134,061.77 | $ - |
| 12/3/2015 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 354,198.03 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 134,076.77 | $ - |
| 1/1/2016 | $ 3,305.23 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 357,503.26 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 134,076.77 | $ - |
| 1/4/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 357,503.26 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (184,088.71) | $ 134,091.77 | $ - |
| 1/19/2016 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 357,503.26 | $ - | $ - | $ (4,681.05) | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,091.77 | $ - |
| 1/29/2016 | $ - | $ - | $ 430.00 | Foreclosure Fee | 3/1/2007 | $ 357,503.26 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,521.77 | $ - |
| 2/1/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 357,503.26 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,536.77 | $ - |
| 2/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 360,808.50 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,536.77 | $ - |
| 2/22/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 360,808.50 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,551.77 | $ - |
| 2/23/2016 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 360,808.50 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,536.77 | $ - |
| 3/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 364,113.74 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,536.77 | $ - |
| 3/10/2016 | $ - | $ - | $ 75.00 | Filing Costs | 3/1/2007 | $ 364,113.74 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,611.77 | $ - |
| 3/10/2016 | $ - | $ - | $ 75.00 | Filing Costs | 3/1/2007 | $ 364,113.74 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,686.77 | $ - |
| 3/10/2016 | $ - | $ - | $ 50.00 | Filing Costs | 3/1/2007 | $ 364,113.74 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,736.77 | $ - |
| 3/17/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 364,113.74 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,751.77 | $ - |
| 4/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 367,418.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (188,769.76) | $ 134,751.77 | $ - |
| 4/7/2016 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 367,418.98 | $ - | $ - | $ (3,100.00) | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,751.77 | $ - |
| 4/11/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 367,418.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,766.77 | $ - |
| 5/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 370,724.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,766.77 | $ - |
| 5/5/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 370,724.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,781.77 | $ - |
| 6/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 374,029.46 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,781.77 | $ - |
| 6/2/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 374,029.46 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (191,869.76) | $ 134,796.77 | $ - |
| 6/16/2016 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 374,029.46 | $ - | $ - | $ (2,026.50) | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,796.77 | $ - |
| 6/29/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 374,029.46 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,811.77 | $ - |
| 6/29/2016 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 374,029.46 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,796.77 | $ - |
| 7/1/2016 | $ 3,305.24 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 377,334.70 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,796.77 | $ - |
| 7/21/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 377,334.70 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,811.77 | $ - |
| 8/1/2016 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 380,684.53 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,811.77 | $ - |
| 8/18/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 380,684.53 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 134,826.77 | $ - |
| 8/22/2016 | $ - | $ - | $ 1,720.00 | Foreclosure Fee | 3/1/2007 | $ 380,684.53 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 136,546.77 | $ - |
| 9/1/2016 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 384,034.36 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 136,546.77 | $ - |
| 9/6/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 384,034.36 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (193,896.26) | $ 136,561.77 | $ - |
| 9/20/2016 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 384,034.36 | $ - | $ - | $ (10,462.81) | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 136,561.77 | $ - |
| 9/21/2016 | $ - | $ - | $ 20,270.36 | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 384,034.36 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,832.13 | $ - |
| 10/1/2016 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 387,384.19 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,832.13 | $ - |
| 10/11/2016 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 387,384.19 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,847.13 | $ - |
| 11/1/2016 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 390,734.02 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,847.13 | $ - |
| 11/9/2016 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 390,734.02 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,832.13 | $ - |
| 12/1/2016 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 394,083.85 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,832.13 | $ - |
| 1/1/2017 | $ 3,349.83 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 397,433.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (204,359.07) | $ 156,832.13 | $ - |
| 1/18/2017 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 397,433.68 | $ - | $ - | $ (4,478.39) | $ - | $ - | $ 503,400.00 | $ - | $ (208,837.46) | $ 156,832.13 | $ - |
| 2/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 400,846.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (208,837.46) | $ 156,832.13 | $ - |
| 3/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 404,259.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (208,837.46) | $ 156,832.13 | $ - |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued Interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 407,671.99 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(208,537.46) | $ 156,652.13 | $ - |
| 4/11/2017 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 407,671.99 | $ - | $ (2,679.00) | $ - | $ - | $ - | $ 503,400.00 | $ - | $(211,516.46) | $ 156,652.13 | $ - |
| 5/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 411,084.76 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(211,516.46) | $ 156,652.13 | $ - |
| 5/30/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 411,084.76 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(211,516.46) | $ 156,647.13 | $ - |
| 6/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 414,497.53 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(211,516.46) | $ 156,647.13 | $ - |
| 6/13/2017 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 414,497.53 | $ - | $ (1,893.25) | $ - | $ - | $ - | $ 503,400.00 | $ - | $(213,409.71) | $ 156,647.13 | $ - |
| 7/1/2017 | $ 3,412.77 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 417,910.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(213,409.71) | $ 156,647.13 | $ - |
| 8/1/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 417,910.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(213,409.71) | $ 156,652.13 | $ - |
| 8/1/2017 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 421,354.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(213,409.71) | $ 156,652.13 | $ - |
| 9/1/2017 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 424,797.90 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(213,409.71) | $ 156,652.13 | $ - |
| 9/19/2017 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 424,797.90 | $ - | $ - | $(10,094.11) | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,652.13 | $ - |
| 9/26/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 424,797.90 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,637.13 | $ - |
| 10/1/2017 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 428,241.70 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,637.13 | $ - |
| 10/30/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 428,241.70 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,622.13 | $ - |
| 11/1/2017 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 431,685.50 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,622.13 | $ - |
| 11/28/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 431,685.50 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,607.13 | $ - |
| 12/1/2017 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 435,129.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,607.13 | $ - |
| 12/29/2017 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 435,129.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,592.13 | $ - |
| 1/1/2018 | $ 3,443.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 438,573.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(224,403.82) | $ 156,592.13 | $ - |
| 1/22/2018 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 438,573.10 | $ - | $ - | $ (4,273.37) | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 156,592.13 | $ - |
| 1/29/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 438,573.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 156,577.13 | $ - |
| 2/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 442,078.07 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 156,577.13 | $ - |
| 2/23/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 442,078.07 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 156,562.13 | $ - |
| 3/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 156,562.13 | $ - |
| 3/20/2018 | $ - | $ - | $ (59,999.00) | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 84,952.14 | $ - |
| 3/20/2018 | $ - | $ - | $ (33,987.14) | OLD ESCROW DISB CLEARING AC | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 30,985.00 | $ - |
| 3/23/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 21,000.00 | $ - |
| 3/26/2018 | $ - | $ - | $ 45.00 | Filing Costs | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 21,045.00 | $ - |
| 3/26/2018 | $ - | $ - | $ 35.00 | Filing Costs | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 21,080.00 | $ - |
| 3/26/2018 | $ - | $ - | $ 31.54 | Certified Mail | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 21,111.54 | $ - |
| 3/26/2018 | $ - | $ - | $ 2,590.00 | Foreclosure Fee | 3/1/2007 | $ 445,583.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 23,701.54 | $ - |
| 4/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 449,088.01 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(228,677.19) | $ 23,701.54 | $ - |
| 4/12/2018 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 449,088.01 | $ - | $ - | $ (2,452.00) | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 23,701.54 | $ - |
| 4/12/2018 | $ - | $ - | $ 50.00 | Filing Costs | 3/1/2007 | $ 449,088.01 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 23,751.54 | $ - |
| 4/12/2018 | $ - | $ - | $ 3.82 | Certified Mail | 3/1/2007 | $ 449,088.01 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 23,755.36 | $ - |
| 4/25/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 449,088.01 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 23,770.36 | $ - |
| 5/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 23,770.36 | $ - |
| 5/15/2018 | $ - | $ - | $ 495.00 | Foreclosure Fee | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 24,265.36 | $ - |
| 5/18/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 24,280.36 | $ - |
| 5/23/2018 | $ - | $ - | $ 550.00 | Foreclosure Fee | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 25,105.36 | $ - |
| 5/23/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 25,335.36 | $ - |
| 5/23/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 25,570.36 | $ - |
| 5/23/2018 | $ - | $ - | $ 322.50 | Foreclosure Fee | 3/1/2007 | $ 452,592.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 25,835.36 | $ - |
| 6/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(231,129.19) | $ 25,592.06 | $ - |
| 6/6/2019 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 456,097.95 | $ - | $ (1,838.26) | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 25,592.06 | $ - |
| 6/14/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 26,107.86 | $ - |
| 6/14/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 26,322.86 | $ - |
| 6/14/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 26,537.86 | $ - |
| 6/14/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 26,752.86 | $ - |
| 6/14/2018 | $ - | $ - | $ 550.00 | Foreclosure Fee | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,612.86 | $ - |
| 6/18/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 456,097.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,627.86 | $ - |
| 7/1/2018 | $ 3,504.97 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 459,602.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,627.86 | $ - |
| 7/2/2018 | $ - | $ - | $ 70.00 | Filing Costs | 3/1/2007 | $ 459,602.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,697.86 | $ - |
| 7/2/2018 | $ - | $ - | $ 100.00 | Filing Costs | 3/1/2007 | $ 459,602.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,797.86 | $ - |
| 7/18/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 459,602.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,812.86 | $ - |
| 8/1/2018 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 463,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,812.86 | $ - |
| 8/15/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 463,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,827.86 | $ - |
| 8/30/2018 | $ - | $ - | $ 100.00 | Filing Costs | 3/1/2007 | $ 463,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(232,967.45) | $ 27,927.86 | $ - |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/20/2018 | $ - | $ - | $ 20.00 | Filing Costs | 3/1/2007 | $ 483,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 27,847.86 | $ - |
| 8/30/2018 | $ - | $ - | $ 70.00 | Filing Costs | 3/1/2007 | $ 483,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 28,017.86 | $ - |
| 8/20/2018 | $ - | $ - | $ 250.00 | Sheriff Costs | 3/1/2007 | $ 483,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 28,267.86 | $ - |
| 8/30/2018 | $ - | $ - | $ 70.00 | Filing Costs | 3/1/2007 | $ 483,321.45 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 29,337.86 | $ - |
| 9/1/2018 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 28,337.86 | $ - |
| 9/5/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 28,552.86 | $ - |
| 9/5/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 28,767.86 | $ - |
| 9/5/2018 | $ - | $ - | $ 860.00 | Foreclosure Fee | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 29,627.86 | $ - |
| 9/17/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (232,967.43) | $ 29,642.86 | $ - |
| 9/19/2018 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 487,039.88 | $ - | $ - | $ (11,545.75) | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,642.86 | $ - |
| 10/1/2018 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 470,753.51 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,642.86 | $ - |
| 10/12/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 470,758.51 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,657.86 | $ - |
| 10/23/2018 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 470,758.51 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,765.36 | $ - |
| 11/1/2018 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 474,477.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,765.36 | $ - |
| 11/13/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 474,477.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,780.36 | $ - |
| 11/21/2018 | $ - | $ - | $ 161.25 | Foreclosure Fee | 3/1/2007 | $ 474,477.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 29,941.61 | $ - |
| 11/21/2018 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 474,477.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 30,049.11 | $ - |
| 11/21/2018 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 474,477.04 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 30,156.61 | $ - |
| 12/1/2018 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 30,156.61 | $ - |
| 12/14/2018 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 30,171.61 | $ - |
| 12/17/2018 | $ - | $ - | $ 860.00 | Foreclosure Fee | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 31,031.61 | $ - |
| 12/17/2018 | $ - | $ - | $ 322.50 | Foreclosure Fee | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 31,354.11 | $ - |
| 12/17/2018 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 31,569.11 | $ - |
| 12/17/2018 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 478,195.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 31,676.61 | $ - |
| 1/1/2019 | $ 3,718.53 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (244,513.20) | $ 31,676.61 | $ - |
| 1/10/2019 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ (4,390.70) | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 31,676.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 20.00 | Filing Costs | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 31,696.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 70.00 | Filing Costs | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 31,766.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 20.00 | Filing Costs | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 31,786.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 50.00 | Filing Costs | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 31,836.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 495.00 | Foreclosure Fee | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,331.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,546.61 | $ - |
| 1/11/2019 | $ - | $ - | $ 53.75 | Foreclosure Fee | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,600.36 | $ - |
| 1/11/2019 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 481,914.10 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,615.36 | $ - |
| 2/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 485,724.05 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,615.36 | $ - |
| 3/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 489,534.00 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,615.36 | $ - |
| 3/22/2019 | $ - | $ - | $ 70.00 | Filing Costs | 3/1/2007 | $ 489,534.00 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,685.36 | $ - |
| 4/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 493,343.95 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (248,903.98) | $ 32,685.36 | $ - |
| 4/3/2019 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 493,343.95 | $ - | $ - | $ (2,448.00) | $ - | $ - | $ 503,400.00 | $ - | $ (251,349.98) | $ 32,685.36 | $ - |
| 5/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 497,153.90 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (251,349.98) | $ 32,685.36 | $ - |
| 5/15/2019 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 497,153.90 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (251,349.98) | $ 32,792.86 | $ - |
| 6/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 500,963.85 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (251,349.98) | $ 32,792.86 | $ - |
| 6/7/2019 | $ - | $ - | $ 460.00 | Title Examination | 3/1/2007 | $ 500,963.85 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (251,349.98) | $ 33,252.86 | $ - |
| 6/10/2019 | $ - | $ - | $ - | HAZARD SFR DISBURSED | 3/1/2007 | $ 500,963.85 | $ - | $ - | $ (1,508.00) | $ - | $ - | $ 503,400.00 | $ - | $ (252,858.04) | $ 33,252.86 | $ - |
| 6/14/2019 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 500,963.85 | $ - | $ - | $ (1,789.86) | $ - | $ - | $ 503,400.00 | $ - | $ (254,747.90) | $ 33,252.86 | $ - |
| 7/1/2019 | $ 3,809.95 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 504,773.80 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (254,747.90) | $ 33,252.86 | $ - |
| 8/1/2019 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 508,494.37 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (254,747.90) | $ 33,252.86 | $ - |
| 9/1/2019 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 512,214.94 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (254,747.90) | $ 33,252.86 | $ - |
| 9/25/2019 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 512,214.94 | $ - | $ - | $ (11,257.66) | $ - | $ - | $ 503,400.00 | $ - | $ (266,005.56) | $ 33,252.86 | $ - |
| 9/27/2019 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 512,214.94 | $ - | $ - | $ (1,072.00) | $ - | $ - | $ 503,400.00 | $ - | $ (267,717.56) | $ 33,252.86 | $ - |
| 10/1/2019 | $ - | $ - | $ - | HAZARD INSURANCE DEPOSIT | 3/1/2007 | $ 512,214.94 | $ - | $ - | $ 1,250.00 | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,252.86 | $ - |
| 10/1/2019 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 515,935.51 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,252.86 | $ - |
| 11/1/2019 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 519,656.08 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,252.86 | $ - |
| 12/1/2019 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 523,376.65 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,252.86 | $ - |
| 12/26/2019 | $ - | $ - | $ 149.32 | Publication | 3/1/2007 | $ 523,376.65 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,402.18 | $ - |
| 1/1/2020 | $ 3,720.57 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 527,097.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,402.18 | $ - |
| 1/14/2020 | $ - | $ - | $ 250.00 | Filing Costs | 3/1/2007 | $ 527,097.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,652.18 | $ - |
| 1/14/2020 | $ - | $ - | $ 247.50 | Foreclosure Fee | 3/1/2007 | $ 527,097.22 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (266,467.56) | $ 33,899.68 | $ - |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/15/2020 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 527,057.22 | $ - | $ - | $ (4,356.53) | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 33,599.03 | $ - |
| 2/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 530,674.67 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 33,599.03 | $ - |
| 3/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 534,252.12 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 33,599.03 | $ - |
| 3/17/2020 | $ - | $ - | $ 450.00 | MFR Fees | 3/1/2007 | $ 534,252.12 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 34,049.03 | $ - |
| 3/20/2020 | $ - | $ - | $ 500.00 | POC Fees | 3/1/2007 | $ 534,252.12 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 34,549.03 | $ - |
| 4/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 34,549.03 | $ - |
| 4/21/2020 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 34,571.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 845.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 35,516.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 322.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 35,838.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 36,053.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 36,268.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 645.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 36,913.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 86.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 36,999.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,021.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 64.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,085.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,107.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 64.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,171.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,193.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 86.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,279.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,300.63 | $ - |
| 4/21/2020 | $ - | $ - | $ 64.50 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,365.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 43.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,408.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 86.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,494.13 | $ - |
| 4/21/2020 | $ - | $ - | $ 86.00 | Foreclosure Fee | 3/1/2007 | $ 537,829.57 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,580.13 | $ - |
| 5/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 541,407.02 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,580.13 | $ - |
| 6/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 544,984.47 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 37,580.13 | $ - |
| 5/12/2020 | $ - | $ - | $ 550.00 | Objection Costs | 3/1/2007 | $ 544,984.47 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (270,834.00) | $ 38,130.13 | $ - |
| 6/15/2020 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 544,984.47 | $ - | $ - | $ (2,013.43) | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 38,130.18 | $ - |
| 7/1/2020 | $ 3,577.45 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 548,561.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 38,130.18 | $ - |
| 7/6/2020 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 548,561.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 38,145.18 | $ - |
| 7/29/2020 | $ - | $ - | $ (200.00) | MFR Fees | 3/1/2007 | $ 548,561.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 37,945.18 | $ - |
| 7/29/2020 | $ - | $ - | $ (200.00) | POC Fees | 3/1/2007 | $ 548,561.92 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 37,745.18 | $ - |
| 8/1/2020 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 551,922.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 37,745.18 | $ - |
| 8/3/2020 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 551,922.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 37,730.18 | $ - |
| 9/1/2020 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 555,282.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (272,837.52) | $ 37,730.18 | $ - |
| 9/18/2020 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 555,282.30 | $ - | $ - | $ (12,017.18) | $ - | $ - | $ 503,400.00 | $ - | $ (284,854.70) | $ 37,730.18 | $ - |
| 9/23/2020 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 555,282.30 | $ - | $ - | $ (1,111.00) | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 37,730.18 | $ - |
| 9/23/2020 | $ - | $ - | $ 261.25 | Delinquent P&I payment Due | 3/1/2007 | $ 555,282.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 37,991.43 | $ - |
| 10/1/2020 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 558,642.49 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 37,991.43 | $ - |
| 11/1/2020 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 562,002.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 37,991.43 | $ - |
| 12/1/2020 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 565,362.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 37,991.43 | $ - |
| 12/22/2020 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 565,362.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 38,006.43 | $ - |
| 1/1/2021 | $ 3,360.19 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 568,723.06 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (285,965.70) | $ 38,006.43 | $ - |
| 1/15/2021 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 568,723.06 | $ - | $ - | $ (4,489.65) | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,006.43 | $ - |
| 1/20/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 568,723.06 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,021.43 | $ - |
| 2/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 572,072.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,021.43 | $ - |
| 2/17/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 572,072.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,036.43 | $ - |
| 2/25/2021 | $ - | $ - | $ 129.00 | Foreclosure Fee | 3/1/2007 | $ 572,072.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,165.43 | $ - |
| 2/25/2021 | $ - | $ - | $ 645.00 | Foreclosure Fee | 3/1/2007 | $ 572,072.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,810.43 | $ - |
| 2/25/2021 | $ - | $ - | $ 43.00 | Foreclosure Fee | 3/1/2007 | $ 572,072.87 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,853.43 | $ - |
| 3/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 575,422.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,853.43 | $ - |
| 3/22/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 575,422.68 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,868.43 | $ - |
| 4/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 578,772.49 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,868.43 | $ - |
| 4/20/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 578,772.49 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,883.43 | $ - |
| 5/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 582,122.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,883.43 | $ - |
| 5/19/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 582,122.30 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,898.43 | $ - |
| 6/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 585,472.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 38,898.43 | $ - |
| 6/14/2021 | $ - | $ - | $ 215.00 | Foreclosure Fee | 3/1/2007 | $ 585,472.11 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $ (290,455.50) | $ 39,113.43 | $ - |

| Date | B. Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued Interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/16/2021 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 585,472.11 | - | $ - | $ (1,534.46) | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,113.43 | $ - |
| 7/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 588,821.92 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,113.43 | $ - |
| 7/20/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 588,821.92 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,128.43 | $ - |
| 8/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 592,171.73 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,128.43 | $ - |
| 9/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,128.43 | $ - |
| 9/2/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (292,280.02) | $ 39,143.43 | $ - |
| 9/10/2021 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 595,521.54 | - | $ - | $ (1,245.00) | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,143.43 | $ - |
| 9/20/2021 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 595,521.54 | - | $ - | $ (11,708.72) | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,143.43 | $ - |
| 9/27/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,158.43 | $ - |
| 9/29/2021 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,143.43 | $ - |
| 9/30/2021 | $ - | $ - | $ 53.75 | Foreclosure Fee | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,197.18 | $ - |
| 9/30/2021 | $ - | $ - | $ 21.50 | Foreclosure Fee | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,218.68 | $ - |
| 9/30/2021 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 595,521.54 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,326.18 | $ - |
| 10/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 598,871.35 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,326.18 | $ - |
| 11/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 602,221.16 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,326.18 | $ - |
| 11/2/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 602,221.16 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,341.18 | $ - |
| 11/9/2021 | $ - | $ - | $ 50.00 | Foreclosure Fee | 3/1/2007 | $ 602,221.16 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,391.18 | $ - |
| 11/17/2021 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 602,221.16 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,406.18 | $ - |
| 11/18/2021 | $ - | $ - | $ (15.00) | Property Inspection | 3/1/2007 | $ 602,221.16 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,391.18 | $ - |
| 12/1/2021 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 605,570.97 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,391.18 | $ - |
| 12/22/2021 | $ - | $ - | $ 107.50 | Foreclosure Fee | 3/1/2007 | $ 605,570.97 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,498.68 | $ - |
| 1/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 608,920.78 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (305,233.74) | $ 39,498.68 | $ - |
| 1/19/2022 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 608,920.78 | - | $ - | $ (4,387.41) | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,498.68 | $ - |
| 2/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 612,270.59 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,498.68 | $ - |
| 2/3/2022 | $ - | $ - | $ 64.50 | Foreclosure Fee | 3/1/2007 | $ 612,270.59 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,563.18 | $ - |
| 3/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 615,620.40 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,563.18 | $ - |
| 3/29/2022 | $ - | $ - | $ 18.84 | Certified Mail | 3/1/2007 | $ 615,620.40 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,582.12 | $ - |
| 3/29/2022 | $ - | $ - | $ 5.30 | Certified Mail | 3/1/2007 | $ 615,620.40 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,585.42 | $ - |
| 3/29/2022 | $ - | $ - | $ 75.00 | Foreclosure Fee | 3/1/2007 | $ 615,620.40 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,660.42 | $ - |
| 4/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 618,970.31 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,660.42 | $ - |
| 4/8/2022 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 618,970.31 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,675.42 | $ - |
| 5/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 622,320.02 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,675.42 | $ - |
| 5/6/2022 | $ - | $ - | $ 15.00 | Property Inspection | 3/1/2007 | $ 622,320.02 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,690.42 | $ - |
| 6/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 625,669.83 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,690.42 | $ - |
| 6/3/2022 | $ - | $ - | $ 250.00 | Foreclosure Fee | 3/1/2007 | $ 625,669.83 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,940.42 | $ - |
| 6/9/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 625,669.83 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (309,621.15) | $ 39,960.42 | $ - |
| 6/16/2022 | $ - | $ - | $ - | VILLAGE DISBURSED | 3/1/2007 | $ 625,669.83 | - | $ - | $ (2,468.83) | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 39,960.42 | $ - |
| 7/1/2022 | $ 3,349.81 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 629,019.64 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 39,960.42 | $ - |
| 7/7/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 629,019.64 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 39,980.42 | $ - |
| 8/1/2022 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 632,561.73 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 39,980.42 | $ - |
| 8/4/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 632,561.73 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 40,000.42 | $ - |
| 9/1/2022 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 636,103.82 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (312,089.98) | $ 40,000.42 | $ - |
| 9/13/2022 | $ - | $ - | $ - | HAZARD INSURANCE DISBURSED | 3/1/2007 | $ 636,103.82 | - | $ - | $ (1,296.00) | - | $ - | $ 503,400.00 | - | $ (313,385.98) | $ 40,000.42 | $ - |
| 9/14/2022 | $ - | $ - | $ - | SCHOOL TAX DISBURSED | 3/1/2007 | $ 636,103.82 | - | $ - | $ (11,821.46) | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,000.42 | $ - |
| 9/30/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 636,103.82 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,020.42 | $ - |
| 10/1/2022 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 639,645.91 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,020.42 | $ - |
| 10/3/2022 | $ - | $ - | $ (20.00) | Property Inspection | 3/1/2007 | $ 639,645.91 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,000.42 | $ - |
| 11/1/2022 | $ - | $ - | $ 325.00 | Property Inspection | 3/1/2007 | $ 639,645.91 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,343.42 | $ - |
| 11/2/2022 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 643,188.00 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,343.42 | $ - |
| 11/22/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 643,188.00 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,365.42 | $ - |
| 11/30/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 643,188.00 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,385.42 | $ - |
| 12/1/2022 | $ - | $ - | $ (20.00) | Property Inspection | 3/1/2007 | $ 643,188.00 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,365.42 | $ - |
| 12/1/2022 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 646,730.09 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,365.42 | $ - |
| 12/29/2022 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 646,730.09 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,385.42 | $ - |
| 1/1/2023 | $ 3,542.09 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 650,272.18 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (325,207.44) | $ 40,385.42 | $ - |
| 1/19/2023 | $ - | $ - | $ - | TOWN TAX DISBURSED | 3/1/2007 | $ 650,272.18 | - | $ - | $ (4,319.89) | - | $ - | $ 503,400.00 | - | $ (329,527.30) | $ 40,385.42 | $ - |
| 2/1/2023 | $ 3,733.90 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 654,006.08 | - | $ - | - | - | $ - | $ 503,400.00 | - | $ (329,527.30) | $ 40,385.42 | $ - |

| | B Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/2/2023 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 654,008.03 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,405.42 | $ - |
| 2/22/2023 | $ - | $ - | $ 403.75 | Foreclosure Fee | 3/1/2007 | $ 654,008.03 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,809.17 | $ - |
| 3/1/2023 | $ 3,733.80 | $ - | $ - | Delinquent P&I payment Due | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,809.17 | $ - |
| 3/7/2023 | $ - | $ - | $ 20.00 | Property Inspection | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,829.17 | $ - |
| 3/28/2023 | $ - | $ - | $ 30.00 | Property Inspection | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,859.17 | $ - |
| 3/30/2023 | $ - | $ - | $ (30.00) | Property Inspection_Nullify | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 40,829.17 | $ - |
| 3/30/2023 | $ - | $ - | $ 250.00 | Filing Costs_03/13/2023 | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 41,079.17 | $ - |
| 3/30/2023 | $ - | $ - | $ 64.50 | Foreclosure Fee_03/24/2023 | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 41,143.67 | $ - |
| 3/30/2023 | $ - | $ - | $ 107.50 | Foreclosure Fee_03/28/2023 | 3/1/2007 | $ 657,739.98 | $ - | $ - | $ - | $ - | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 41,251.17 | $ - |
| 3/30/2023 | | | $ 1,050.00 | Foreclosure Fee_03/17/2023 | 3/1/2007 | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,301.17 | $ - |
| 3/30/2023 | | | $ 150.00 | Foreclosure Fee_03/09/2023 | 3/1/2007 | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,451.17 | $ - |
| 3/30/2023 | | | $ 150.00 | Foreclosure Fee_03/17/2023 | 3/1/2007 | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,601.17 | $ - |
| 3/30/2023 | | | $ 300.00 | Foreclosure Fee_03/17/2023 | 3/1/2007 | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |
| | | | | | | $ 657,739.98 | | | | | $ - | $ 503,400.00 | $ - | $(329,527.33) | $ 42,901.17 | $ - |

## ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

# ORIGINAL

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

117 BRIGADOON BOULEVARD, HIGHLAND MILLS, NY 10930-
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S.       $503,400.00       (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
        Option One Mortgage Corporation, a California Corporation               .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.200%   . The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS** *** INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND MADE PART HEREOF***
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on    August 01    , 2005    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
        July 01        , 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at    Option One Mortgage Corporation
   P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S.   $2,600.90   . This amount may change.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
   (D) Application of Payments
   Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**  ***INTEREST ONLY NOTE ADDENDUM
   (A) Change Dates                               ATTACHED HERETO AND MADE PART HEREOF***
   The interest rate I will pay may change on the first day of      July      , 2007      ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
        FIVE AND 30/100        percentage point(s) (  5.300%   )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  9.200%  or less than  6.200% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than  12.200%  or less than  6.200% .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal. the reduction will be treated as a partial prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000%  of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include. for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
EMANUEL   ARCHIBALD                     -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
YVONNE   MOODY                           -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                                          -Borrower

[Sign Original Only]



Date: 06/16/05

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: EMANUEL ARCHIBALD and YVONNE MOODY
Loan #:
Property Address: 117 BRIGADOON BOULEVARD, HIGHLAND MILLS, NY 10930-
Loan Amount: $503,400.00

Note Date: 06/16/05

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____

Scott Geller
Assistant Secretary

Page 1 of 1

USD3050.wp (03-14-03)

# ADDENDUM TO NOTE
# FOR THE INTEREST ONLY PAYMENT PERIOD

**THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.**

THIS ADDENDUM TO NOTE FOR THE INTEREST ONLY PAYMENT PERIOD is made this 16 day of June , 2005 and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to Option One Mortgage Corporation, a California Corporation (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

117 BRIGADOON BOULEVARD, HIGHLAND MILLS, NY 10930-

ADDITIONAL COVENANTS: Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Sections 3 and 4 of the Note are modified to provide for sixty (60) monthly payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note. Sections 3 and 4 of the Note are modified as follows:

### 1. PAYMENTS
(A) Time and Place of Payments
I will pay interest during the Interest Only Period, and principal and interest thereafter during the Amortization Period, by making a payment every month.

Interest Only Period - The "Interest Only Period" is the period from the date of this Note through the 60th Monthly Payment

Amortization Period - The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date.

I will make my monthly payments on the first day of each month beginning on August 01, 2005 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on July 01, 2035 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make monthly payments at Option One Mortgage Corporation Department 7821, Los Angeles, CA 90084-7821 or at a different place if required by the Note Holder.

(B) Amount of My Interest Only Payments
The first Twenty Four (24) monthly payments will be in the full amount of U.S. $ 2,600.90 which equals one twelfth (1/12) of the amount of yearly interest due on the principal at the initial rate. The next Thirty Six (36) monthly payments will equal one twelfth (1/12) of the amount of yearly interest due on the unpaid principal balance, at the time of change, at the rate determined in accordance with Section 4 of the Note. These payments are called the "Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of this Note.

*Interest Only Payment Period Addendum - ARM*
Page 1 of 3                                                              USD5251.wp (02-24-05)

**(C) Monthly Payment Changes**

During the Interest Only period, changes in my monthly payment will reflect changes in the interest rate that I must pay. During the Amortization Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 2. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of   July 01, 2007         and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average on interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   FIVE AND 30/100 percentage points(s) (   5.300%   ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   9.200%         or less than   6.200%       . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   One       percentage point(s) (   1.0%     ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   12.200%       nor less than   6.200%       .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any changes. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

11. All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

**I understand that for the Interest Only Period I will not be reducing the principal balance. After 5 years if I only made my minimum payment, my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Addendum.

_____ (Seal)          _____ (Seal)
EMANUEL   ARCHIBALD        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
YVONNE   MOODY              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                        -Borrower

*Interest Only Payment Period Addendum - ARM*
Page 3 of 3

USD5251.wp (02-24-05)

 

| Loan Number: ████ | Servicing Number: ████ | Date: 06/16/05 |

## PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of

(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

Section 5 of the Note is amended to read in its entirety as follows:

5. **Borrower's Right to Prepay**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within 12 months from the date of execution of the Security Instrument I make a full prepayment or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state or federal law. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.

_____          _____
EMANUEL  ARCHIBALD          Borrower                                    Borrower

_____          _____
YVONNE  MOODY          Borrower                                    Borrower

_____          _____
Borrower                                    Borrower

(Sign Original Only)

NEW YORK PREPAYMENT CHARGE NOTE ADDENDUM - Adjustable Rate Note
Page 1 of 1                                                                 NYP1021.wp (12-01-04)

# ORANGE COUNTY CLERK'S OFFICE RECORDING PAGE
**THIS PAGE IS PART OF THE INSTRUMENT – DO NOT REMOVE**

TYPE IN BLACK INK:
NAME(S) OF PARTY(S) TO DOCUMENT

EMANUEL ARCHIBALD and
YVONNE MOODY

TO

OPTION ONE MORTGAGE CORPORATION

*THIS IS PAGE ONE OF THE RECORDING*

SECTION **50** BLOCK **1** LOT **77**

RECORD AND RETURN TO:
(name and address)

ROCKWEST ABSTRACT LTD
301 NORTH MAIN STREET
NEW CITY, NEW YORK 10956
(800) 834-2445 TOLL FREE

ATTACH THIS SHEET TO THE FIRST PAGE OF EACH
RECORDED INSTRUMENT ONLY

## DO NOT WRITE BELOW THIS LINE

INSTRUMENT TYPE: DEED____ MORTGAGE ✓ SATISFACTION____ ASSIGNMENT____ OTHER_____

## PROPERTY LOCATION

| | | | | NO PAGES **14** CROSS REF._____ |
|---|---|---|---|---|
| ____2089 | BLOOMING GROVE (TN) | ____4289 | MONTGOMERY (TN) | CERT.COPY____ ADD'L X-REF.____ |
| ____2001 | WASHINGTONVILLE (VLG) | ____4201 | MAYBROOK (VLG) | MAP#_____ PGS._____ |
| ____2289 | CHESTER (TN) | ____4203 | MONTGOMERY (VLG) | |
| ____2201 | CHESTER (VLG) | ____4205 | WALDEN (VLG) | PAYMENT TYPE: CHECK ✓ |
| ____2489 | CORNWALL (TN) | ____4489 | MOUNT HOPE (TN) | CASH_____ |
| ____2401 | CORNWALL (VLG) | ____4401 | OTISVILLE (VLG) | CHARGE_____ |
| ____2600 | CRAWFORD (TN) | ____4600 | NEWBURGH (TN) | NO FEE_____ |
| ____2800 | DEERPARK (TN) | ____4800 | NEW WINDSOR (TN) | Taxable |
| ____3089 | GOSHEN (TN) | ____5089 | TUXEDO (TN) | CONSIDERATION $_____ |
| ____3001 | GOSHEN (VLG) | ____5001 | TUXEDO PARK (VLG) | TAX EXEMPT_____ |
| ____3003 | FLORIDA (VLG) | ____5200 | WALLKILL (TN) | Taxable |
| ____3005 | CHESTER (VLG) | ____5489 | WARWICK (TN) | MORTGAGE AMT. $ 503,400.00 |
| ____3200 | GREENVILLE (TN) | ____5401 | FLORIDA (VLG) | |
| ____3489 | HAMPTONBURGH (TN) | ____5403 | GREENWOOD LAKE (VLG) | |
| ____3401 | MAYBROOK (VLG) | ____5405 | WARWICK (VLG) | **MORTGAGE TAX TYPE:** |
| ____3689 | HIGHLANDS (TN) | ____5600 | WAWAYANDA (TN) | ____ (A) COMMERCIAL/FULL 1% |
| ____3601 | HIGHLAND FALLS (VLG) | ✓5889 | WOODBURY (TN) | ____ (B) 1 OR 2 FAMILY |
| ____3889 | MINISINK (TN) | ____5801 | HARRIMAN (VLG) | ✓ (C) UNDER $10,000 |
| ____3801 | UNIONVILLE (VLG) | | | ____ (E) EXEMPT |
| ____4089 | MONROE (TN) | | **CITIES** | ____ (F) 3 TO 6 UNITS |
| ____4001 | MONROE (VLG) | ____0900 | MIDDLETOWN | ____ (I) NAT.PERSON/CR. UNION |
| ____4003 | HARRIMAN (VLG) | ____1100 | NEWBURGH | ____ (J) NAT.PER-CR.UN/1 OR 2 |
| ____4005 | KIRYAS JOEL (VLG) | ____1300 | PORT JERVIS | ____ (K) CONDO |
| | | ____9999 | HOLD | |

**DONNA L. BENSON**
ORANGE COUNTY CLERK

RECEIVED FROM: *Rockwest Abstract Ltd.*

RECORDED/FILED
06/27/2005/  09:13:35
County Clerk
DONNA L. BENSON
ORANGE COUNTY, NY

FILE # 20050070971
MORT/BK 11881 PG 1707
SER# CW007790 MTAX 5,255.70
BASIC 2,517.00
MTA  1,480.20
SPECIAL 0.00
SPECIAL ASST  1,258.50
RECORDING FEES 67.00
Receipt#440651 alicev

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:  RECORDS MANAGEMENT

Loan Number:
Servicing Numb

ROCKWEST ABSTRACT
301 North Main Street
New City, NY 10956
(800) 834-2445

[Space Above This Line For Recording Data]

# MORTGAGE

☒   THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

☐   THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED WITH A STRUCTURE CONTAINING SIX RESIDENTIAL UNITS OR LESS, EACH DWELLING UNIT HAVING ITS OWN COOKING FACILITIES.

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated      June 16, 2005                 , will be called the "Security Instrument."

(B) "Borrower."   EMANUEL ARCHIBALD  AND YVONNE MOODY,

*Residing at 117 Brigadoon Blvd, Highland mills, NY 10930* 

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender."

              Option One Mortgage Corporation, a California Corporation
will be called "Lender." Lender is a corporation or association which exists under the laws of    CALIFORNIA
. Lender's address is
              3 Ada, Irvine, CA 92618

(D) "Note." The note signed by Borrower and dated       June 16, 2005                 , will be called the "Note."
The Note shows that I owe Lender  FIVE HUNDRED THREE THOUSAND FOUR HUNDRED
. . .AND NO/100THs        Dollars (U.S. $503,400.00        ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by    July 01, 2035              .

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at                      117  BRIGADOON BOULEVARD
                                                                    [Street]

        HIGHLAND MILLS          . New York             10930-          . This Property is in
              [City]                                  [Zip Code]
                                Orange
SEC 50 / BLK 1 / LOT 77                          County. It has the following legal description:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

NEW YORK - Single Family
Page 1 of 9                                                                      NYD10011 (09/22/00)

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

COVENANTS

I promise and I agree with Lender as follows:

## 1. BORROWER'S PROMISE TO PAY

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

## 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE
### (A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":

(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);

(iii) The estimated yearly premium for hazard or property insurance covering the Property;

(iv) The estimated yearly premium for flood insurance covering the Property (if any);

(v) The estimated yearly premium for mortgage insurance (if any); and

(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

### (B) Lender's Obligations

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these

services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**
Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes: First, to pay any prepayment charges due under the Note; Next, to pay the amounts due to Lender under Paragraph 2 above: Next, to pay interest due; Next, to pay principal due; and Last, to pay any late charges due under the Note.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**
I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

NYD10013 (09/22/00)

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

### (A) Borrower's Obligations to Occupy the Property

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

### (B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note. I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan. Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

NYD10014 (09/22/00)

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

**9. LENDER'S RIGHT TO INSPECT THE PROPERTY**
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

**11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A) Borrower's Obligations**
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

**(B) Lender's Rights**
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

**12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

NYD10015 (09/22/00)

### 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

### 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

### 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

### 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS
Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is know as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. To the extent permitted by applicable law, I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

## 23. MISREPRESENTATION AND NONDISCLOSURE
Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

## 24. TIME IS OF THE ESSENCE
Time is of the essence in the performance of each provision of this Security Instrument.

## 25. WAIVER OF STATUTE OF LIMITATIONS
The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

## 26. MODIFICATION
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

## 27. REIMBURSEMENT
To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharge and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.
Page 7 of 9                                                                                    NYD10017 (09/22/00)

Loan Number: ▮▮▮▮▮▮     Servicing Number: ▮▮▮▮▮▮▮     Date:  06/16/05

**28. CLERICAL ERROR**

In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**29. LOST STOLEN, DESTROYED OR MUTILATED SECURITY INSTRUMENT AND OTHER DOCUMENTS**

In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**30. ASSIGNMENT OF RENTS**

As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**31. ATTORNEYS' FEES**

As used in this Security Instrument and the note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**32. AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**33. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider                  ☐ 1-4 Family Rider
☐ Manufactured Home Rider          ☐ Planned Unit Development Rider      ☐ Occupancy Rider
☒ Other(s) (specify)   Interest Only Adjustable Rate Rider

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_____                    _____ (Seal)
                    Witness                                                    -Borrower

_____                    _____ (Seal)
                    Witness                                                    -Borrower

_____ (Seal)             _____ (Seal)
EMANUEL   ARCHIBALD        -Borrower                                          -Borrower

_____ (Seal)             _____ (Seal)
YVONNE   MOODY             -Borrower                                          -Borrower

NYD10018 (09/22/00)



## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK,     )
County of _Rockland_     ) ss.:

On the _16_ day of _JUNE_ in the year _2005_ before me, the undersigned, personally appeared _Emanuel Archibald and Yuonne Moody_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Individual taking acknowledgement

CLARENCE R. CASTEL, JR.
Qualified in Rockland County
No. 01CA4649142
Term Expires March 30, : _2007_        **OR**

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country
        ) ss.:

On the ____ day of _____ in the year ____ before me, the undersigned, personally appeared _____
_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____ .
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and Office of Individual taking acknowledgement

NYD10019 (09/22/00)

Loan Number: ███████████    Date: 06/16/05

# ADJUSTABLE RATE RIDER
# FOR THE INTEREST ONLY PAYMENT PERIOD
## (LIBOR Index - Rate Caps)

**THIS RIDER TO THE SECURITY INSTRUMENT PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.**

THIS ADJUSTABLE RATE RIDER is made          June 16, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
        117  BRIGADOON BOULEVARD,  HIGHLAND MILLS, NY 10930-

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I. The Note provides for an initial interest rate of          6.200%          . The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
    The interest rate I will pay may change on the first day of   July 01, 2007 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                          USR1041.wp (06-30-03)

Loan Number: ███████████████████████    Date: 06/16/05

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 30/100 percentage point(s) ( 5.300% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Interest Only Period - The "Interest Only Period" is the period from the date of this Note through the 60th Monthly Payment. For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment to be one-twelfth (1/12ᵗʰ) of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

Amortization Period - The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date. During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchange during that period. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.200% or less than 6.200% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 12.200% or less than 6.200% .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**II. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER** - Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 2 of 3

USR1041.wp (06-30-03)

## SCHEDULE A

ALL that certain plot, piece or parcel of land, situate lying and being in the Town of Woodbury, County of Orange and State of New York, shown and designated as Lot No. 57 upon a certain map entitled "RUSHMORE, a Residential Community, Town of Woodbury, Orange County, New York," made by Siegmond & Associates and filed in the Office of the Clerk of Orange County, New York, on June 20, 2000 as Map No. 122-00.

TOGETHER WITH all of the rights and benefits and SUBJECT TO all of the burdens set forth in the DECLARATION OF COVENANTS, RESTRICTIONS, EASEMENTS, CHARGES AND LIENS of "BRIGADOON AT HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC." recorded in the Orange County Clerk's Office on February 19, 2002 in Liber 5786 Page 234, and Re-Recorded on January 14, 2004 in Liber 11349 Page 1739.



Loan Number: ███████████████████          Date:   06/16/05

also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

III. All other provisions of the Security Instrument and any Rider are unchanged by this Rider to the Security Instrument for Interest Only Payments and remain in full force and effect.

**I understand that for the Interest Only Period I will not be reducing the principal balance. After 5 years if I only made my minimum payment, my principal balance will not be reduced.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider for the Interest Only Payment Period.

_____ (Seal)          _____ (Seal)
EMANUEL   ARCHIBALD

_____ (Seal)          _____ (Seal)
YVONNE   MOODY

_____ (Seal)          _____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 3 of 3                                                  USR1041.wp (06-30-03)

# ORANGE COUNTY CLERK'S OFFICE RECORDING PAGE
### THIS PAGE IS PART OF THE INSTRUMENT – DO NOT REMOVE

TYPE IN BLACK INK:
NAME(S) OF PARTY(S) TO DOCUMENT

Option One Mortgage Corporation,
A California Corporation

TO

Wells Fargo Bank, N.A.

SECTION 250 BLOCK 1 LOT 77

RECORD AND RETURN TO:
(name and address)

Threshold Land Inc.
584 Main Street, Suite 2
Islip, New York 11751

*THIS IS PAGE ONE OF THE RECORDING*

**ATTACH THIS SHEET TO THE FIRST PAGE OF EACH
RECORDED INSTRUMENT ONLY**

26050070971   DO NOT WRITE BELOW THIS LINE

INSTRUMENT TYPE: DEED____ MORTGAGE____ SATISFACTION____ ASSIGNMENT ✓ OTHER____

## PROPERTY LOCATION

| | | |
|---|---|---|
| ___2089 BLOOMING GROVE (TN) | ___4289 MONTGOMERY (TN) | NO PAGES 3 CROSS REF._____ |
| ___2001 WASHINGTONVILLE (VLG) | ___4201 MAYBROOK (VLG) | CERT.COPY____ ADD'L X-REF.____ |
| ___2289 CHESTER (TN) | ___4203 MONTGOMERY (VLG) | MAP#_____ PGS._____ |
| ___2201 CHESTER (VLG) | ___4205 WALDEN (VLG) | |
| ___2489 CORNWALL (TN) | ___4489 MOUNT HOPE (TN) | PAYMENT TYPE: CHECK ✓ |
| ___2401 CORNWALL (VLG) | ___4401 OTISVILLE (VLG) | CASH____ |
| ___2600 CRAWFORD (TN) | ___4600 NEWBURGH (TN) | CHARGE____ |
| ___2800 DEERPARK (TN) | ___4800 NEW WINDSOR (TN) | NO FEE____ |
| ___3089 GOSHEN (TN) | ___5089 TUXEDO (TN) | Taxable |
| ___3001 GOSHEN (VLG) | ___5001 TUXEDO PARK (VLG) | CONSIDERATION $_____ |
| ___3003 FLORIDA (VLG) | ___5200 WALLKILL (TN) | TAX EXEMPT____ |
| ___3005 CHESTER (VLG) | ___5489 WARWICK (TN) | Taxable |
| ___3200 GREENVILLE (TN) | ___5401 FLORIDA (VLG) | MORTGAGE AMT. $_____ |
| ___3489 HAMPTONBURGH (TN) | ___5403 GREENWOOD LAKE (VLG) | DATE_____ |
| ___3401 MAYBROOK (VLG) | ___5405 WARWICK (VLG) | |
| ___3689 HIGHLANDS (TN) | ___5600 WAWAYANDA (TN) | **MORTGAGE TAX TYPE:** |
| ___3601 HIGHLAND FALLS (VLG) | ___5889 WOODBURY (TN) | ___ (A) COMMERCIAL/FULL 1% |
| ___3889 MINISINK (TN) | ___5801 HARRIMAN (VLG) | ___ (B) 1 OR 2 FAMILY |
| ___3801 UNIONVILLE (VLG) | | ___ (C) UNDER $10,000 |
| ___4089 MONROE (TN) | **CITIES** | ___ (E) EXEMPT |
| ___4001 MONROE (VLG) | ___0900 MIDDLETOWN | ___ (F) 3 TO 6 UNITS |
| ___4003 HARRIMAN (VLG) | ___1100 NEWBURGH | ___ (I) NAT.PERSON/CR. UNION |
| ___4005 KIRYAS JOEL (VLG) | ___1300 PORT JERVIS | ___ (J) NAT.PER-CR.UN/1 OR 2 |
| | | ___ (K) CONDO |
| | ___9999 HOLD | |

*Donna L. Denson*
DONNA L. DENSON
ORANGE COUNTY CLERK

RECEIVED FROM: Threshold Land

RECORDED/FILED
07/17/2008/ 11:27:10
DONNA L. BENSON
County Clerk
ORANGE COUNTY, NY
FILE # 20080071868
A/MTG / BK 12698 PG 1864
RECORDING FEES 34.50
Receipt#909939 alicev

SmB

ORIGINAL

Record and Return To:
Wilshire Credit Corporation
14523 SW Millikan Way, #200
Beaverton, OR 97005
Loan #

Loan Number :
Servicing Num

[Space Above This Line For Recording Data]

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS That

OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

whose address is : 3 Ada, Irvine, CA 92618                              as Mortgagee under that certain MORTGAGE executed by

EMANUEL ARCHIBALD AND YVONNE MOODY

as mortgagor on the

_June 16, 2005_ , and recorded on the  X          day of

in Book                                                of                           at page

under filing No.                    of the records of                       Orange                                County,

State of New York, given to secure the payment of a promissory note for the sum of

. five hundred three thousand four hundred                                   Dollars    ($503,400.00)

and interest, has endorsed said note and does hereby ASSIGN AND TRANSFER to

**Wells Fargo Bank, N.A. as Trustee for the MLMI Trust Series 2005-HE3**

whose address is: _9062 Old Annapolis Road, Columbia, MD 21045_

prior assignments : _N/A_

_✓ Recorded 6/27/2005 in BK 11881, Pg 1707 as 2005007007l_

all right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness secured thereby. The said
Mortgage described herein affects the premises commonly known and designated as:

### DESCRIBED ON MORTGAGE REFERRED TO HEREIN

Section _25D_                       Address:

Block    **1**                         117 BRIGADOON BOULEVARD HIGHLAND MILLS, NY  10930

Lot  . _77_                        Town:

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the
secondary mortgage market.

IN WITNESS WHEREOF said

OPTION ONE MORTGAGE CORPORATION,  A CALIFORNIA CORPORATION

has caused this instrument to be signed by its        Assistant Secretary
and attested by its corporate seal this          29th   day of June, A.D. 2005.

OPTION ONE MORTGAGE CORPORATION,
a California Corporation

By:_____ 

Katherine Burns                      ,   Assistant Secretary

_____ [Space Below This Line For Acknowledgment]_____

State of California, County of _Orange_                                                          }SS:

On _June 29, 2005_

Before me came _Katherine Burns_                    , to me known, who being by me duly sworn, did depose and say that

he/she resides at _3 Ada, Irvine, CA  92618_

in California. That he/she is the _Assistant Secretary_                            of Option One Mortgage Corporation the

corporation described in and which executed, the foregoing instrument:  that he knows the seal of said corporation; that the seal
affixed to said instrument is such corporate seal that it was so affixed by order of the Board of Option One Mortgage Corporation
said corporation, and that he/she signed his/her name thereto by like order.

Witness my hand and official seal.
(Reserved for official seal)

DANA DENTON
COMM. #1437276
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires September 2, 2007

Signature_____

Dana Denton

Name (typed or printed)

My commision expires:_____ September 02, 2007

# Schedule A



**Title Number** █████████

---

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, situate, lying and being in the Town of Woodbury, County of Orange and State of New York, shown and designated as Lot Number 57 upon on a certain map entitled, "RUSHMORE, a Residential Community, Town of Woodbury, Orange County, New York," made by Siegmond & Associates and filed in the Office of the Clerk of Orange County, New York, on June 20, 2000 as Map Number 122-00.

TOGETHER WITH all of the rights and SUBJECT TO all of the burdens set forth in the DECLARATION OF COVENANTS, RESTRICTIONS, EASEMENTS, CHARGES AND LIENS of "BRIGADOON AT HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC." recorded in the Orange County Clerk's Office on February 19, 2002 in Liber 5786 Page 234, and Re-Recorded on January 14, 2004 in Liber 11349 Page 1739.

Section:    250    Block:    1    Lot:    77

## Annual Escrow Account
### Disclosure Statement

5/9/2023



CHANGING THE FACE OF HOME LOANS

| Loan Number | |
|---|---|
| Analysis Date | April 3, 2023 |

8950 Cypres Waters Blvd.
Coppell TX 75019

EMANUEL ARCHIBALD

YVONNE MOODY

117 BRIGADOON BLVD, HIGHLAND

MILLS, NY, 10930

| Previous Payment | | |
|---|---|---|
| Principal & Interest | $ | 3,733.90 |
| Escrow | $ | 1,717.87 |
| **Total** | **$** | **5,451.77** |
| New Payment | | |
| Effective Date | | April 1, 2023 |
| Principal & Interest | $ | 3,733.90 |
| Escrow | $ | 1,658.85 |
| **Total** | **$** | **5,392.75** |

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year. The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point, there is a surplus. If the projected low point is less than the allowable low point, there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a specified number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment information.

**Our records indicate that you have filed a bankruptcy.** This statement is sent for informational purposes only and is not an attempt to collect a debt. It does not alter or affect the terms of your bankruptcy proceedings. Please disregard the payment information if it conflicts with any order or requirement of the court.
If you filed a Chapter 13, any unpaid amounts prior to the filing of your bankruptcy petition may be paid through and in accordance with your bankruptcy plan. If you are a Chapter 13 debtor whose plan requires you to make regular post petition payments directly to the Chapter 13 trustee, any payment should be remitted to the trustee directly

| Escrow Accounts Summary | | |
|---|---|---|
| Tax | $ | 18,610.18 |
| Insurance | $ | 1,296.00 |
| Lender-Placed Insurance | $ | - |
| Mortgage Insurance | $ | - |
| **Annual Total** | **$** | **19,906.18** |
| **Approximate Monthly Deposit** | **$** | **1,658.85** |
| **Monthly Deposit Without Mortgage Insurance** | **$** | **1,658.85** |
| **RESPA Cushion (About Two Monthly Deposits)*** | **$** | **3,317.70** |

| Escrow Included in Proof of Claims | | |
|---|---|---|
| Bankruptcy Filing Date | | March 30, 2023 |
| Total Escrow Funds Advanced by Your Servicer at Filing Date | $ | 329,527.33 |
| Plus Balance Required at Filing to Maintain RESPA Minimum | $ | 8,950.89 |
| Minus Escrow Account Balance at Filing Date | $ | - |
| **Total Shortage at Filing Date** | **$** | **338,478.22** |

These columns show when each of your escrow accounts is expected to be paid during the next escrow

This column shows your new monthly escrow deposits over the next escrow cycle.

This column shows what your escrow balance would be without any additional funds.

This column shows the calculation of the amount of funds needed to maintain your RESPA cushion* through the next

### Escrow Balance Projection

| Month | Escrow Payment | Tax Disbursements | Insurance Disbursements | LPI Disbursements | Mortgage Insurance Disbursements | Balance | Required Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $ - | $ 8,950.89 |
| Apr 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ 1,658.85 | $ 10,609.74 |
| May 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ 3,317.70 | $ 12,268.59 |
| Jun 2023 | $ 1,658.85 | $ 2,468.83 | $ - | $ - | $ - | $ 2,507.72 | $ 11,458.61 |
| Jul 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ 4,166.57 | $ 13,117.46 |
| Aug 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ 5,825.42 | $ 14,776.31 |
| Sep 2023 | $ 1,658.85 | $ 11,821.46 | $ 1,296.00 | $ - | $ - | $ (5,633.19) | $ 3,317.70 |
| Oct 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ (3,974.34) | $ 4,976.55 |
| Nov 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ (2,315.49) | $ 6,635.40 |
| Dec 2023 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ (656.64) | $ 8,294.25 |
| Jan 2024 | $ 1,658.85 | $ 4,319.89 | $ - | $ - | $ - | $ (3,317.68) | $ 5,633.21 |
| Feb 2024 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ (1,658.83) | $ 7,292.06 |
| Mar 2024 | $ 1,658.85 | $ - | $ - | $ - | $ - | $ 0.02 | $ 8,950.91 |
| **Totals** | **$ 19,906.20** | **$ 18,610.18** | **$ 1,296.00** | **$ -** | **$ -** | | |
| | | | Balance Required at Filing to Maintain RESPA Cushion* | | | | $ 8,950.89 |

\* - The cushion allowed by federal law (RESPA) is two times your monthly escrow payment excluding any mortgage insurance payments, unless your state's laws specify a lower amount. The highlighted value in the Required Balance column indicates where the RESPA cushion limit is set--this is lowest balance your Escrow account will reach during the next Escrow cycle and all of the other values in the column are based on it.

# Annual Escrow Account
## Disclosure Statement

| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|---|---|---|---|---|---|---|---|
| | **Escrow Account Transactions Prior to Bankruptcy Filing** | | | | | | |
| 4/4/2014 | ESCROW ADVANCE | $ 70,000.00 | | | | $ 70,000.00 | $ 70,000.00 |
| 4/4/2014 | ESCROW ADJUSTMENT | | | | $ 70,000.00 | $ - | $ 70,000.00 |
| 6/10/2014 | VILLAGE ADVANCE | $ 1,608.06 | | | | $ 1,608.06 | $ 71,608.06 |
| 6/10/2014 | VILLAGE DISBURSED | | | | $ 1,608.06 | $ - | $ 71,608.06 |
| 6/19/2014 | HAZARD INSURANCE ADVANCE | $ 4,229.00 | | | | $ 4,229.00 | $ 75,837.06 |
| 6/19/2014 | HAZARD INSURANCE DISBURSED | | | | $ 4,229.00 | $ - | $ 75,837.06 |
| 9/15/2014 | SCHOOL TAX ADVANCE | $ 10,226.31 | | | | $ 10,226.31 | $ 86,063.37 |
| 9/15/2014 | SCHOOL TAX DISBURSED | | | | $ 10,226.31 | $ - | $ 86,063.37 |
| 9/16/2014 | DEPOSIT | | | | $ (16,063.37) | $ 16,063.37 | $ 86,063.37 |
| 9/16/2014 | ESCROW ADVANCE | | | $ 16,063.37 | | $ - | $ 70,000.00 |
| 1/16/2015 | TOWN TAX ADVANCE | $ 5,158.84 | | | | $ 5,158.84 | $ 75,158.84 |
| 1/16/2015 | TOWN TAX DISBURSED | | | | $ 5,158.84 | $ - | $ 75,158.84 |
| 4/9/2015 | HAZARD INSURANCE ADVANCE | $ 3,249.00 | | | | $ 3,249.00 | $ 78,407.84 |
| 4/9/2015 | HAZARD INSURANCE DISBURSED | | | | $ 3,249.00 | $ - | $ 78,407.84 |
| 6/17/2015 | VILLAGE ADVANCE | $ 1,761.02 | | | | $ 1,761.02 | $ 80,168.86 |
| 6/17/2015 | VILLAGE DISBURSED | | | | $ 1,761.02 | $ - | $ 80,168.86 |
| 9/21/2015 | SCHOOL TAX ADVANCE | $ 10,588.15 | | | | $ 10,588.15 | $ 90,757.01 |
| 9/21/2015 | SCHOOL TAX DISBURSED | | | | $ 10,588.15 | $ - | $ 90,757.01 |
| 9/22/2015 | DEPOSIT | | | | $ (20,757.01) | $ 20,757.01 | $ 90,757.01 |
| 9/22/2015 | ESCROW ADVANCE | | | $ 20,757.01 | | $ - | $ 70,000.00 |
| 1/19/2016 | TOWN TAX ADVANCE | $ 4,681.05 | | | | $ 4,681.05 | $ 74,681.05 |
| 1/19/2016 | TOWN TAX DISBURSED | | | | $ 4,681.05 | $ - | $ 74,681.05 |
| 4/7/2016 | HAZARD INSURANCE ADVANCE | $ 3,100.00 | | | | $ 3,100.00 | $ 77,781.05 |
| 4/7/2016 | HAZARD INSURANCE DISBURSED | | | | $ 3,100.00 | $ - | $ 77,781.05 |
| 6/16/2016 | VILLAGE ADVANCE | $ 2,026.50 | | | | $ 2,026.50 | $ 79,807.55 |
| 6/16/2016 | VILLAGE DISBURSED | | | | $ 2,026.50 | $ - | $ 79,807.55 |
| 9/20/2016 | SCHOOL TAX ADVANCE | $ 10,462.81 | | | | $ 10,462.81 | $ 90,270.36 |
| 9/20/2016 | SCHOOL TAX DISBURSED | | | | $ 10,462.81 | $ - | $ 90,270.36 |
| 9/21/2016 | DEPOSIT | | | | $ (20,270.36) | $ 20,270.36 | $ 90,270.36 |
| 9/21/2016 | ESCROW ADVANCE | | | $ 20,270.36 | | $ - | $ 70,000.00 |
| 1/18/2017 | TOWN TAX ADVANCE | $ 4,478.39 | | | | $ 4,478.39 | $ 74,478.39 |
| 1/18/2017 | TOWN TAX DISBURSED | | | | $ 4,478.39 | $ - | $ 74,478.39 |
| 4/11/2017 | HAZARD INSURANCE ADVANCE | $ 2,679.00 | | | | $ 2,679.00 | $ 77,157.39 |
| 4/11/2017 | HAZARD INSURANCE DISBURSED | | | | $ 2,679.00 | $ - | $ 77,157.39 |
| 6/13/2017 | VILLAGE ADVANCE | $ 1,893.25 | | | | $ 1,893.25 | $ 79,050.64 |
| 6/13/2017 | VILLAGE DISBURSED | | | | $ 1,893.25 | $ - | $ 79,050.64 |
| 9/19/2017 | SCHOOL TAX ADVANCE | $ 10,994.11 | | | | $ 10,994.11 | $ 90,044.75 |
| 9/19/2017 | SCHOOL TAX DISBURSED | | | | $ 10,994.11 | $ - | $ 90,044.75 |
| 1/22/2018 | TOWN TAX ADVANCE | $ 4,273.37 | | | | $ 4,273.37 | $ 94,318.12 |
| 1/22/2018 | TOWN TAX DISBURSED | | | | $ 4,273.37 | $ - | $ 94,318.12 |
| 3/20/2018 | ESCROW ADVANCE | $ 99,999.99 | | | | $ 99,999.99 | $ 194,318.11 |
| 3/20/2018 | ESCROW ADVANCE | $ 35,967.14 | | | | $ 135,967.13 | $ 230,285.25 |
| 3/20/2018 | ESCROW ADJUSTMENT | | | | $ 99,999.99 | $ 35,967.14 | $ 230,285.25 |
| 3/20/2018 | ESCROW ADJUSTMENT | | | | $ 35,967.14 | $ - | $ 230,285.25 |
| 4/10/2018 | HAZARD INSURANCE ADVANCE | $ 2,452.00 | | | | $ 2,452.00 | $ 232,737.25 |
| 4/10/2018 | HAZARD INSURANCE DISBURSED | | | | $ 2,452.00 | $ - | $ 232,737.25 |
| 6/8/2018 | VILLAGE ADVANCE | $ 1,838.26 | | | | $ 1,838.26 | $ 234,575.51 |
| 6/8/2018 | VILLAGE DISBURSED | | | | $ 1,838.26 | $ - | $ 234,575.51 |
| 9/19/2018 | SCHOOL TAX ADVANCE | $ 11,545.75 | | | | $ 11,545.75 | $ 246,121.26 |
| 9/19/2018 | SCHOOL TAX DISBURSED | | | | $ 11,545.75 | $ - | $ 246,121.26 |
| 1/10/2019 | TOWN TAX ADVANCE | $ 4,390.78 | | | | $ 4,390.78 | $ 250,512.04 |
| 1/10/2019 | TOWN TAX DISBURSED | | | | $ 4,390.78 | $ - | $ 250,512.04 |
| 4/9/2019 | HAZARD INSURANCE ADVANCE | $ 2,446.00 | | | | $ 2,446.00 | $ 252,958.04 |
| 4/9/2019 | HAZARD INSURANCE DISBURSED | | | | $ 2,446.00 | $ - | $ 252,958.04 |
| 6/14/2019 | VILLAGE ADVANCE | $ 1,789.86 | | | | $ 1,789.86 | $ 254,747.90 |
| 6/14/2019 | VILLAGE DISBURSED | | | | $ 1,789.86 | $ - | $ 254,747.90 |
| 9/13/2019 | SCHOOL TAX ADVANCE | $ 11,897.66 | | | | $ 11,897.66 | $ 266,645.56 |
| 9/13/2019 | SCHOOL TAX DISBURSED | | | | $ 11,897.66 | $ - | $ 266,645.56 |
| 9/27/2019 | HAZARD INSURANCE ADVANCE | $ 1,072.00 | | | | $ 1,072.00 | $ 267,717.56 |
| 9/27/2019 | HAZARD INSURANCE DISBURSED | | | | $ 1,072.00 | $ - | $ 267,717.56 |
| 10/1/2019 | HAZARD INSURANCE DEPOSIT | | | | $ (1,250.00) | $ 1,250.00 | $ 267,717.56 |
| 10/1/2019 | ESCROW ADVANCE | | | $ 1,250.00 | | $ - | $ 266,467.56 |
| 1/15/2020 | TOWN TAX ADVANCE | $ 4,356.53 | | | | $ 4,356.53 | $ 270,824.09 |

**Annual Escrow Account**
**Disclosure Statement**

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| 1/15/2020 | TOWN TAX DISBURSED | | | | $ 4,356.53 | $ - | $ 270,824.09 |
| 6/15/2020 | VILLAGE ADVANCE | $ 2,013.43 | | | | $ 2,013.43 | $ 272,837.52 |
| 6/15/2020 | VILLAGE DISBURSED | | | | $ 2,013.43 | $ - | $ 272,837.52 |
| 9/16/2020 | SCHOOL TAX ADVANCE | $ 12,017.18 | | | | $ 12,017.18 | $ 284,854.70 |
| 9/16/2020 | SCHOOL TAX DISBURSED | | | | $ 12,017.18 | $ - | $ 284,854.70 |
| 9/23/2020 | HAZARD INSURANCE ADVANCE | $ 1,111.00 | | | | $ 1,111.00 | $ 285,965.70 |
| 9/23/2020 | HAZARD INSURANCE DISBURSED | | | | $ 1,111.00 | $ - | $ 285,965.70 |
| 1/15/2021 | TOWN TAX ADVANCE | $ 4,489.86 | | | | $ 4,489.86 | $ 290,455.56 |
| 1/15/2021 | TOWN TAX DISBURSED | | | | $ 4,489.86 | $ - | $ 290,455.56 |
| 6/16/2021 | VILLAGE ADVANCE | $ 1,824.46 | | | | $ 1,824.46 | $ 292,280.02 |
| 6/16/2021 | VILLAGE DISBURSED | | | | $ 1,824.46 | $ - | $ 292,280.02 |
| 9/10/2021 | HAZARD INSURANCE ADVANCE | $ 1,245.00 | | | | $ 1,245.00 | $ 293,525.02 |
| 9/10/2021 | HAZARD INSURANCE DISBURSED | | | | $ 1,245.00 | $ - | $ 293,525.02 |
| 9/20/2021 | SCHOOL TAX ADVANCE | $ 11,708.72 | | | | $ 11,708.72 | $ 305,233.74 |
| 9/20/2021 | SCHOOL TAX DISBURSED | | | | $ 11,708.72 | $ - | $ 305,233.74 |
| 1/19/2022 | TOWN TAX ADVANCE | $ 4,387.41 | | | | $ 4,387.41 | $ 309,621.15 |
| 1/19/2022 | TOWN TAX DISBURSED | | | | $ 4,387.41 | $ - | $ 309,621.15 |
| 6/16/2022 | VILLAGE ADVANCE | $ 2,468.83 | | | | $ 2,468.83 | $ 312,089.98 |
| 6/16/2022 | VILLAGE DISBURSED | | | | $ 2,468.83 | $ - | $ 312,089.98 |
| 9/12/2022 | HAZARD INSURANCE ADVANCE | $ 1,296.00 | | | | $ 1,296.00 | $ 313,385.98 |
| 9/12/2022 | HAZARD INSURANCE DISBURSED | | | | $ 1,296.00 | $ - | $ 313,385.98 |
| 9/14/2022 | SCHOOL TAX ADVANCE | $ 11,821.46 | | | | $ 11,821.46 | $ 325,207.44 |
| 9/14/2022 | SCHOOL TAX DISBURSED | | | | $ 11,821.46 | $ - | $ 325,207.44 |
| 1/19/2023 | TOWN TAX ADVANCE | $ 4,319.89 | | | | $ 4,319.89 | $ 329,527.33 |
| 1/19/2023 | TOWN TAX DISBURSED | | | | $ 4,319.89 | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |

**Annual Escrow Account**
**Disclosure Statement**

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |

## Annual Escrow Account
## Disclosure Statement

5/9/2023

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |
| | | | | | | $    - | $    329,527.33 |

**Annual Escrow Account**
**Disclosure Statement**

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |

**Annual Escrow Account
Disclosure Statement**

5/9/2023

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |
|  |  |  |  |  |  | $ - | $ 329,527.33 |

**Annual Escrow Account**
**Disclosure Statement**

5/9/2023

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |
| | | | | | | $         - | $      329,527.33 |

## Annual Escrow Account
## Disclosure Statement

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |

**Annual Escrow Account**
**Disclosure Statement**

5/9/2023

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |
| | | | | | | $          - | $       329,527.33 |

**Annual Escrow Account**
**Disclosure Statement**

| | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |

## Annual Escrow Account
## Disclosure Statement

5/9/2023

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | | | | | | $ - | $ 329,527.33 |
| | Totals: $ 387,868.07 | $ - | $ 58,340.74 | $ 329,527.33 | $ - | $ 58,340.74 |

EXHIBIT B

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

SD-1-77

ROCKWEST ABSTRACT
301 North Main Street
New City, NY 10956
(800) 834-2445

CRO-11634

[Space Above This Line For Recording Data]

# MORTGAGE

☒ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

☐ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED WITH A STRUCTURE CONTAINING SIX RESIDENTIAL UNITS OR LESS, EACH DWELLING UNIT HAVING ITS OWN COOKING FACILITIES.

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated      June 16, 2005      , will be called the "Security Instrument."
(B) "Borrower." EMANUEL ARCHIBALD AND YVONNE MOODY,

Brooklyn at 117 Brigadoon Blvd, Highland Mills, NY 10930

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
            Option One Mortgage Corporation, a California Corporation
will be called "Lender." Lender is a corporation or association which exists under the laws of      CALIFORNIA
            . Lender's address is
                3 Ada, Irvine, CA   92618
(D) "Note." The note signed by Borrower and dated      June 16, 2005      , will be called the "Note."
The Note shows that I owe Lender   FIVE HUNDRED THREE THOUSAND FOUR HUNDRED
            . . .AND NO/100THs      Dollars (U.S. $503,400.00      ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by      July 01, 2035      .
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at      117   BRIGADOON BOULEVARD
                                                    Street
        HIGHLAND MILLS                    , New York      10930-            . This Property is in
            (City)                                              (Zip Code)
                                        Orange            County. It has the following legal description:
SEC 50 / BLK 1 / LOT 77

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Date: 09/16/05

REDACTED      REDACTED

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument combines promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language".

COVENANTS

I promise and I agree with Lender as follows:

1. BORROWER'S PROMISE TO PAY

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE

(A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition to making the loan that I promise to pay under the Note, (i) I will pay the premiums for that mortgage insurance (if any), and (ii) under Paragraph 8 below, instead of making the mortgage insurance premium payments, I will pay to Lender all amounts necessary to pay for mortgage insurance.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items". The amounts that I pay for the Escrow Items to Lender on the same day that my monthly payments of principal and interest are due under the Note, otherwise, I will make these payments on the same day that any monthly payments of principal and interest are due under the Note.

(i) The estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);

(iii) The estimated yearly premium for hazard or property insurance covering the Property;

(iv) The estimated yearly premium for flood insurance covering the Property (if any);

(v) The estimated yearly premium for mortgage insurance (if any); and

(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay, I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds". The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

(B) Lender's Obligations

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these,


services. If Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when they payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes: First, to pay any prepayment charges due under the Note; Next, to pay the amounts due to Lender under Paragraph 2 above; Next, to pay interest due; Next, to pay principal due; and Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of these payments, I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

### (A) Borrower's Obligations to Occupy the Property

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

### (B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interest in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan. Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of this section above titled "Words About ..." ... A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

## 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

## 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before the sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also will tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

## 20. CONTINUATION OF BORROWER'S OBLIGATION TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental provisions are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.


REDACTED

Date: 06/16/05

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and secured interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. To the extent permitted by applicable law, I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

## 23. MISREPRESENTATION AND NONDISCLOSURE

Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

## 24. TIME IS OF THE ESSENCE

Time is of the essence in the performance of each provision of this Security Instrument.

## 25. WAIVER OF STATUTE OF LIMITATIONS

The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

## 26. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

## 27. REIMBURSEMENT

To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharge and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.


**28. CLERICAL ERROR**

In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**29. LOST STOLEN, DESTROYED OR MUTILATED SECURITY INSTRUMENT AND OTHER DOCUMENTS**

In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**30. ASSIGNMENT OF RENTS**

As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

**31. ATTORNEYS' FEES**

As used in this Security Instrument and the note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**32. AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**33. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Manufactured Home Rider ☐ Planned Unit Development Rider ☐ Occupancy Rider
☒ Other(s) (specify)  Interest Only Adjustable Rate Rider

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_____  _____(Seal)
Witness                                           -Borrower

_____  _____(Seal)
Witness                                           -Borrower

_____(Seal)  _____(Seal)
EMANUEL  ARCHIBALD        -Borrower                -Borrower

_____(Seal)  _____(Seal)
YVONNE  MOODY             -Borrower                -Borrower

  Date: 06/16/05 

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK   )
County of *Rockland*  ) ss.:

On the *16* day of *June*, in the year *2005* before me, the undersigned, personally appeared *Emmanuel Antholini and Vincent Memoli*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Individual taking acknowledgement

      CLARENCE G. CASTEL, JR.
      Qualified in Rockland County
      No. 01CA4649142
      Term Expires March 30, : *2007*      **OR**


## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Outside of New York State)

State, District of Columbia; Territory, Possession or Foreign Country
      ) ss.:

On the _____ day of _____ in the year ____ before me, the undersigned, personally appeared _____
_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____.
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and Office of Individual taking acknowledgement

                      NYD10019 (09/22/00)

# ADJUSTABLE RATE RIDER
# FOR THE INTEREST ONLY PAYMENT PERIOD
### (LIBOR Index - Rate Caps)

**THIS RIDER TO THE SECURITY INSTRUMENT PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.**

**THIS ADJUSTABLE RATE RIDER** is made      June 16, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

117  BRIGADOON BOULEVARD,   HIGHLAND MILLS, NY 10930-

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the *Security Instrument*, Borrower and Lender further covenant and agree as follows:

**1.** The Note provides for an initial interest rate of          6.200%              . The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Date**
The interest rate I will pay may change on the first day of      July 01, 2007
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                                    USR12041.rep (04-20-03)

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 30/100                                       percentage point(s) ( 5.300% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Interest Only Period - The "Interest Only Period" is the period from the date of this Note through the 60th Monthly Payment. For the Interest Only Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be one-twelfth (1/12th) of one (1) year's interest at the new interest rate. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

Amortization Period - The "Amortization Period" is the period after the Interest Only Period and continuing until the Maturity Date. During the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date, assuming, for purposes of each calculation, that the interest rate remained unchanged during that period. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.300%     or less than     5.300%     . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than     12.300%     or less than     5.300%     .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

II. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. - Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 2 of 3                                                                        U3R1041.wp (06-30-03)

## SCHEDULE A

ALL that certain plot, piece or parcel of land, situate lying and being in the Town of Woodbury, County of Orange and State of New York, shown and designated as Lot No. 57 upon a certain map entitled "RUSHMORE, a Residential Community, Town of Woodbury, Orange County, New York," made by Siegmond & Associates and filed in the Office of the Clerk of Orange County, New York, on June 20, 2000 as Map No. 122-00.

TOGETHER WITH all of the rights and benefits and SUBJECT TO all of the burdens set forth in the DECLARATION OF COVENANTS, RESTRICTIONS, EASEMENTS, CHARGES AND LIENS of "BRIGADOON AT HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC." recorded in the Orange County Clerk's Office on February 19, 2002 in Liber 5786 Page 234, and Re-Recorded on January 14, 2004 in Liber 11549 Page 1739.

REDACTED　　　　REDACTED

Date: 06/16/05



also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

III. All other provisions of the Security Instrument and any Rider are unchanged by this Rider to the Security Instrument for Interest Only Payments and remain in full force and effect.

I understand that for the Interest Only Period I will not be reducing the principal balance. After 5 years if I only made my minimum payment, my principal balance will not be reduced.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider for the Interest Only Payment Period.

_____ (Seal)　　　_____ (Seal)
EMANUEL  ARCHIBALD

_____ (Seal)　　　_____ (Seal)
YVONNE  MOODY

_____ (Seal)　　　_____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER LIBOR INDEX - Single Family
Page 3 of 3

USR1041.vp (04-30-03)



Record and Return To:
Wilshire Credit Corporation
14523 SW Millikan Way, #200
Beaverton, OR 97005



ORIGINAL

[Space Above This Line For Recording Data]

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS That
OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION
whose address is : 3 Ada, Irvine, CA 92518    as Mortgagee under that certain MORTGAGE executed by
EMANUEL ARCHIBALD AND YVONNE MOODY
                                                                        as mortgagor on the
                                    dated 16, 2005    , and recorded on the  ✗    day of
                                    in Book    of    at page
under filing No.    of the records of    Orange    County,
State of New York, given to secure the payment of a promissory note for the sum of
    five hundred three thousand four hundred    Dollars    ($503,400.00)
and interest, has endorsed said note and does hereby ASSIGN AND TRANSFER to

Wells Fargo Bank, N.A. as Trustee for the MLMI Trust Series 2005-HE3

whose address is: 9062 Old Annapolis Road, Columbia, MD 2045
prior assignments : N/A

√ Recorded 6/27/2005 in BK 11881, Pg 1307 as 20050070071

all right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness secured thereby. The said
Mortgage described herein effects the premises commonly known and designated as:
    DESCRIBED ON MORTGAGE REFERRED TO HEREIN
Section  25B       Address:
Block   1          117 BRIGADOON BOULEVARD HIGHLAND MILLS, NY 10930
Lot     7)         Town:
This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the
secondary mortgage market.
        IN WITNESS WHEREOF said
        OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION
has caused this instrument to be signed by its    Assistant Secretary
and executed by its corporate seal this    29th  day of June, A.D. 2005.

                                    OPTION ONE MORTGAGE CORPORATION,
                                    a California Corporation

                                    By:
                                    Katherine Burns    , Assistant Secretary

_____ [Space Below This Line For Acknowledgement] _____

State of California, County of  Orange    )SS:

On  June 29, 2005
Before me came   Katherine Burns    , to me known, who being by me duly sworn, did depose and say that
he/she resides at  3 Ada, Irvine, CA 92518
in California. That he/she is the    Assistant Secretary    of Option One Mortgage Corporation the
corporation described in and which executed, the foregoing instrument; that he knows the seal of said corporation; that the seal
affixed to said instrument is such corporate seal that it was so affixed by order of the Board of Option One Mortgage Corporation
said corporation, and that he/she signed his/her name thereto by like order.

Witness my hand and official seal.
(Reserved for official seal)

    DANA DENTON
    COMM. #1437276
    NOTARY PUBLIC - CALIFORNIA
    ORANGE COUNTY
    My Comm. Expires September 2, 2007

Signature
Dana Denton
Name (typed or printed)
My commission expires:    September 02, 2007

## Schedule A

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, situate, lying and being in the Town of Woodbury, County of Orange and State of New York, shown and designated as Lot Number 57 upon a certain map entitled, "RUSHMORE, a Residential Community, Town of Woodbury, Orange County, New York," made by Siegmund & Associates and filed in the Office of the Clerk of Orange County, New York, on June 20, 2000 as Map Number 122-00.

TOGETHER WITH all of the rights and SUBJECT TO all of the burdens set forth in the DECLARATION OF COVENANTS, RESTRICTIONS, EASEMENTS, CHARGES AND LIENS of "BRIGADOON AT HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC." recorded in the Orange County Clerk's Office on February 19, 2002 in Liber 5786 Page 234, and Re-Recorded on January 14, 2004 in Liber 11349 Page 1739.

Section:     250     Block:     1     Lot:     77

EXHIBIT C



*Exhibit C/D*

# Wilshire™

**Wilshire Credit Corporation**

**Payments**
P.O. Box 7195, Pasadena, CA 91109-7195

**Correspondence**
P.O. Box 8517, Portland, OR 97207-8517

**Phone**
888.917.1032

**Fax**
503.952.7476

**Web Site**
www.wcc.ml.com

March 25, 2008

*LIISJ*
ARCHIBALD, EMANUEL
C/O SIMON HAYSOM LLC PO BOX 487
GOSHEN, NY 10924

RE: Loan No.

Dear Valued Customer:

We previously notified you that you are in default under the above loan. Your default includes non-payment of the default amount below.

Amount Due: $45,484.15
Amount Due By: April 24, 2008 ("Expiration Date")

We hereby demand that you cure the default by payment of the default amount shown above. In addition, your regular payment may become due by the Expiration Date. The delinquent amount of principal continues to accrue interest.

If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order, on or before the Expiration Date, we may accelerate the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable. If you send only a partial payment, the loan still will be in default and Wilshire may keep the payment and still may accelerate the maturity date.

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE CREDITOR INTENDS TO ENFORCE ITS RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to consumer reporting agencies.

You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Loan Servicing

Enclosure: How to Avoid Foreclosure

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE http://www.ago.state.co.us/cadc/cadcmain.cfm. NEW YORK CITY: License 1032551. NORTH CAROLINA: Permit 3840. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Wilshire Credit Corporation is licensed to do business at 14523 S.W. Milliken Way, Beaverton, OR. Wilshire's office hours are Monday - Friday 6:00 am to 5:00 pm Pacific time, holidays excluded.
LIISJ



## United States Department of Housing and
## Urban Development Servicemembers
## Civil Relief Act Notice

### Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 U.S.C App. 501, et seq.) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Dependants of the above (e.g., spouse or children).

### What Legal Protections Are Servicemembers Entitled to Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 90 days after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 90 days, after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.

### How Does a Servicemember or Dependent Request Relief Under the SCRA?

- A servicemember or dependent, or both, may request relief under the SCRA by providing the lender/servicer a written notice with a copy of the servicemember's military orders.

Wilshire Credit Corporation
P.O. Box 8517
Portland, OR 97207-8517

### How Does a Servicemember or Dependent Obtain Information About the SCRA?

- The U.S. Department of Defense's information resource is "Military One Source." Web site: <http://www.militaryonesource.com>. The toll-free telephone numbers for Military One Source are: From the United States: 1-800-342-9647. From outside the United States (with applicable access code): 800-342-9647-7. International Collect: 1-484-530-5908.
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed forces is available at: <http://legalassistance.law.af.mil/content/locator.php>.

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE http://www.ago.state.co.us/cadc/cadcmain.cfm. NEW YORK CITY: License 1032551. NORTH CAROLINA: Permit 3840. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Wilshire Credit Corporation is licensed to do business at 14523 S.W. Milliken Way, Beaverton, OR. Wilshire's office hours are Monday - Friday 6:00 am to 5:00 pm Pacific time, holidays excluded.
L1153

 **Wilshire™**

# Wilshire Credit Corporation

**Payments**
P.O. Box 7195, Pasadena, CA 91109-7195

**Correspondence**
P.O. Box 8517, Portland, OR 97207-8517

**Phone**
888.917.1052

**Fax**
503.952.7476

**Web Site**
www.wcc.ml.com

March 25, 2008

*LIISJ*

MOODY, YVONNE
C/O SIMON HAYSOM LLC PO BOX 487
GOSHEN, NY 10924

RE: Loan No.

Dear Valued Customer:

We previously notified you that you are in default under the above loan. Your default includes non-payment of the default amount below.

Amount Due:     $45,484.15
Amount Due By:     April 24, 2008 ("Expiration Date")

We hereby demand that you cure the default by payment of the default amount shown above. In addition, your regular payment may become due by the Expiration Date. The delinquent amount of principal continues to accrue interest.

If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order, on or before the Expiration Date, we may accelerate the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable. If you send only a partial payment, the loan still will be in default and Wilshire may keep the payment and still may accelerate the maturity date.

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE CREDITOR INTENDS TO ENFORCE ITS RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to consumer reporting agencies.

You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Loan Servicing

Enclosure: How to Avoid Foreclosure

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE http://www.ago.state.co.us/cadc/cadcmain.cfm. NEW YORK CITY: License 1032551. NORTH CAROLINA: Permit 3840. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Wilshire Credit Corporation is licensed to do business at 14523 S.W. Millikan Way, Beaverton, OR. Wilshire's office hours are Monday – Friday 6:00 am to 5:00 pm Pacific time, holidays excluded.
*LIISJ*



**Wilshire**℠

### United States Department of Housing and
### Urban Development Servicemembers
### Civil Relief Act Notice

<u>**Legal Rights and Protections Under the SCRA**</u>

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 U.S.C App. 501, et seq.) (SCRA).

<u>**Who May Be Entitled to Legal Protections Under the SCRA?**</u>

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Dependants of the above (e.g., spouse or children).

<u>**What Legal Protections Are Servicemembers Entitled to Under the SCRA?**</u>

- The SCRA states that a debt incurred by a servicemember, or spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 90 days after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 90 days, after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.

<u>**How Does a Servicemember or Dependent Request Relief Under the SCRA?**</u>

- A servicemember or dependent, or both, may request relief under the SCRA by providing the lender/servicer a written notice with a copy of the servicemember's military orders.

Wilshire Credit Corporation<br>
P.O. Box 8517<br>
Portland, OR 97207-8517

<u>**How Does a Servicemember or Dependent Obtain Information About the SCRA?**</u>

- The U.S. Department of Defense's information resource is "Military One Source." Web site: <http://www.militaryonesource.com>. The toll-free telephone numbers for Military One Source are: From the United States: 1-800-342-9647. From outside the United States (with applicable access code): 800-342-9647-7. International Collect: 1-484-530-5908.
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed forces is available at: <http://legalassistance.law.af.mil/content/locator.php>.

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE http://www.ago.state.co.us/cadc/cademain.cfm. NEW YORK CITY: License 1032551. NORTH CAROLINA: Permit 3840. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Wilshire Credit Corporation is licensed to do business at 14523 S.W. Millikan Way, Beaverton, OR. Wilshire's office hours are Monday - Friday 6:00 am to 5:00 pm Pacific time, holidays excluded.
L115J

EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-----------------------------------------------------------------x
WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE
MLMI TRUST SERIES 2005-HE3,

                      Plaintiff,

          -against-

EMANUEL ARCHIBALD; YVONNE MOODY; THE
BOARD OF MANAGERS OF BRIGADOON AT
HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC;
; UNITED STATES OF AMERICA- INTERNAL REVENUE
SERVICE; NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE; "JOHN DOES" and "JANE
DOES", said names being fictitious, parties intended being
possible tenants or occupants of premises, and corporations,
other entities or persons who claim, or may claim, a lien
against the premises,

                      Defendants.
-----------------------------------------------------------------x

Index No.:

D/O/F:

SUMMONS

THE BASIS OF VENUE IS
THAT THE PROPERTY IS
SITUATED IN SAID
COUNTY

DUPLICATE

2008-009428

ORIGINAL FILED

ORANGE COUNTY CLERK
FILED
2008 AUG 29 P 12: 56



TO THE ABOVE NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this
Summons, exclusive of the day of service, where service is made by delivery upon you
personally within the State, or within thirty (30) days after completion of service where service is
made in any other manner, and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

                  NOTICE
           YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of the answer on
the attorney for the mortgage company who filed this foreclosure proceeding against you
and filing the answer with the court a default judgment may be entered and you can lose
your home.

Speak to an attorney or go to the court where your case is pending for further information
on how to answer the summons and protect your property.

Sending a payment to your mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE
ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE
ANSWER WITH THE COURT.

The following notice is intended only for those defendants who are owners of the premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands as security.

YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The present amount of the debt as of the date of this summons: $ 575,420.34 consisting of principal balance of $503,400.00 plus interest of $69,516.08, escrow/impound shortages or credits of $0.00, late charges of $1,168.96; Broker's Price Opinion, inspection and miscellaneous charges of $240.30; attorney fee $600.00 and title search $495.00. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the check, in which event we will inform you.

The name of the creditor to whom the debt is owed: WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2005-HE3.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by the herein debt collector.

If you notify the herein debt collector in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by the herein debt collector.

Upon your written request within 30 days after receipt of this notice, the herein debt collector will provide you with the name and address of the original creditor if different from the current creditor.

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor. Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except EMANUEL ARCHIBALD; YVONNE MOODY: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: EMANUEL ARCHIBALD; YVONNE MOODY: If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: August 26, 2008

Thomas Frost, Esq.
ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, New York 11803
Phone: 516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
--------------------------------------------------------------X
WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE
MLMI TRUST SERIES 2005-HE3,

                                        Plaintiff,

                -against-

EMANUEL ARCHIBALD; YVONNE MOODY; THE
BOARD OF MANAGERS OF BRIGADOON AT
HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC;
; UNITED STATES OF AMERICA- INTERNAL REVENUE
SERVICE; NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE; "JOHN DOES" and "JANE
DOES", said names being fictitious, parties intended being
possible tenants or occupants of premises, and corporations,
other entities or persons who claim, or may claim, a lien
against the premises,

                                        Defendants.
--------------------------------------------------------------X

Index No.:

D/O/F:

COMPLAINT



ORANGE COUNTY CLERK
FILED
2008 AUG 29 PM 2 51

Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of
the Defendant(s) alleges, upon information and belief as follows:

1.     At all times hereinafter mentioned, plaintiff WELLS FARGO BANK, N.A. AS
TRUSTEE FOR THE MLMI TRUST SERIES 2005-HE3 was and still is duly organized and
existing under the laws of the UNITED STATES OF AMERICA.

2.     At all times hereinafter mentioned, the defendants were, and still are, residents,
corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws
of New York State.

3.     On or about June 16, 2005, EMANUEL ARCHIBALD; YVONNE MOODY
executed and delivered to OPTION ONE MORTGAGE CORPORATION, a certain note bearing
date that day, whereby EMANUEL ARCHIBALD; YVONNE MOODY covenanted and agreed
to pay the sum of $503,400.00, which sum, with interest on the unpaid balance thereof, to be
computed from the date of said note, at a rate variable in accordance with the aforesaid
instrument, with the initial rate being 6.200 percent per annum, or such other adjusted rate as
provided for in said agreement, by payments of $2,600.90 on August 1, 2005 and thereafter in
payments of $2,600.90 on the like date of each subsequent month subject to change in
accordance with changes in interest rate, until said note is fully paid, except that the final
payment of principal and interest remaining due, if not sooner paid, shall become due and
payable on July 1, 2035.

4. As collateral security for the payment of said indebtedness, the aforesaid defendant(s) EMANUEL ARCHIBALD; YVONNE MOODY, also executed, acknowledged and delivered to OPTION ONE MORTGAGE CORPORATION, a mortgage dated June 16, 2005 and recorded in the County of Orange on June 27, 2005 in Liber/Reel 11881 of Mortgages, at page 1707. The mortgage tax was duly paid. The aforesaid instruments were assigned to Plaintiff by assignments(s). Plaintiff is still the owner and holder of the aforementioned instrument(s).

Said mortgaged premises being known as and by street address:

117 BRIGADOON BLVD., HIGHLAND MILLS, NY 10930, bearing tax map designation:

Section: 50 Block: 1 Lot(s): 77

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

5. Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

6. The total monthly payment due as of default date to plaintiff is $4,278.90.

7. That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of March 1, 2007 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8. That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

9. Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

10. That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $503,400.00 plus interest from February 1, 2007.

11.    That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument(s) and adjudged a valid lien on the premises hereinabove described.

12.    That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

13.    That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument(s).

14.    That the defendants all have or claim to have some interest in or lien(s) upon the said mortgaged premises, or some part thereof, which interest or lien(s), if any, has [have] accrued subsequently to the lien(s) of the said mortgage(s) or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

15.    That the defendant UNITED STATES OF AMERICA-INTERNAL REVENUE SERVICES is names as a party defendant because of possible unpaid income tax.

16.    That the defendant NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE is names as a party defendant herein because of possible unpaid income tax.

17.    That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

18.    That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Exhibit "B."

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Orange may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold

according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $503,400.00 plus interest from February 1, 2007, and that from the money arising from the sale, plaintiff be paid the amount of $503,400.00 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendants EMANUEL ARCHIBALD; YVONNE MOODY be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action.

Dated: August 26, 2008

Thomas Frost, Esq.
ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, New York 11803
516-741-2585

## Schedule A

ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, situate, lying and being in the Town of Woodbury, County of Orange and State of New York, shown and designated as Lot Number 57 upon on a certain map entitled, "RUSHMORE, a Residential Community, Town of Woodbury, Orange County, New York," made by Siegmond & Associates and filed in the Office of the Clerk of Orange County, New York, on June 30, 2000 as Map Number 122-00.

TOGETHER WITH all of the rights and SUBJECT TO all of the burdens set forth in the DECLARATION OF COVENANTS, RESTRICTIONS, EASEMENTS, CHARGES AND LIENS of "BRIGADOON AT HIGHLAND MILLS HOMEOWNERS ASSOCIATION, INC." recorded in the Orange County Clerk's Office on February 19, 2002 in Liber 5786 Page 234, and Re-Recorded on January 14, 2004 in Liber 11349 Page 1739.

Section: 250    Block: 1    Lot: 77

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-------------------------------------------------------------
WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE
MLMI TRUST SERIES 2005-HE3,

                                              Plaintiff,

           -against-


EMANUEL ARCHIBALD; YVONNE MOODY, et al.,

                                              Defendants.
-------------------------------------------------------------


## SUMMONS AND COMPLAINT


ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, New York 11803
516-741-2585
516-622-9434
RR&A #: 08-021277

EXHIBIT E

# MIDLAND FUNDING, LLC v. JOHNSON

Supreme Court

# Syllabus

MIDLAND FUNDING, LLC v. JOHNSON

823 F. 3d 1334, reversed.

- **Syllabus** [Syllabus] [PDF]
- **Opinion**, Breyer [Breyer Opinion] [PDF]
- **Dissent**, Sotomayor [Sotomayor Dissent] [PDF]

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

SUPREME COURT OF THE UNITED STATES

Syllabus

MIDLAND FUNDING, LLC *v.* JOHNSON

certiorari to the united states court of appeals for the eleventh circuit

No. 16–348.  Argued January 17, 2017—Decided May 15, 2017

Petitioner Midland Funding filed a proof of claim in respondent Johnson's Chapter 13 bankruptcy case, asserting that Johnson owed Midland credit-card debt and noting that the last time any charge appeared on Johnson's account was more than 10 years ago. The relevant statute of limitations under Alabama law is six years. Johnson objected to the claim, and the Bankruptcy Court disallowed it. Johnson then sued Midland, claiming that its filing a proof of claim on an obviously time-barred debt was "false," "deceptive," "misleading," "unconscionable," and "unfair" within the meaning of the Fair Debt Collection Practices Act, 15 U. S. C. §§1692e, 1692f. The District Court held that the Act did not apply and dismissed the suit. The Eleventh Circuit reversed.

*Held*: The filing of a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act. Pp. 2–10.

(a) Midland's proof of claim was not "false, deceptive, or misleading." The Bankruptcy Code defines the term "claim" as a "right to payment," 11 U. S. C. §101(5)(A), and state law usually determines whether a person has such a right, see *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.*, 549 U. S. 443, 450–451. The relevant Alabama law provides that a creditor has the right to payment of a debt even after the limitations period has expired.

Johnson argues that the word "claim" means "enforceable claim." But the word "enforceable" does not appear in the Code's definition, and Johnson's interpretation is difficult to square with Congress's intent "to adopt the broadest available definition of 'claim,' " *Johnson* v. *Home State Bank*, 501 U. S. 78, 83. Other Code provisions are still  more difficult to square with Johnson's interpretation. For example, §502(b)(1) says that if a "claim" is "unenforceable" it will be disallowed, not that it is not a "claim." Other provisions make clear that the running of a limitations period constitutes an affirmative defense that a debtor is to assert after the creditor makes a "claim." §§502, 558. The law has long treated unenforceability of a claim (due to the expiration of the limitations period) as an affirmative defense, and there is nothing misleading or deceptive in the filing of a proof of claim that follows the Code's similar system.

Indeed, to determine whether a statement is misleading normally "requires consideration of the legal sophistication of its audience," *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 383, n. 37, which in a Chapter 13 bankruptcy includes a trustee who is likely to understand that a proof of claim is a statement by the creditor that he or she has a right to payment that is subject to disallowance, including disallowance based on untimeliness. Pp. 2–5.

(b) Several circumstances, taken together, lead to the conclusion that Midland's proof of claim was not "unfair" or "unconscionable" within the terms of the Fair Debt Collection Practices Act.

Johnson points out that several lower courts have found or indicated that, in the context of an ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time barred is "unfair." But those courts rested their conclusions upon their concern that a consumer might unwittingly repay a time-barred debt. Such considerations have significantly diminished force in a Chapter 13 bankruptcy, where the consumer initiates the proceeding, see §§301, 303(a); where a knowledgeable trustee is available, see §1302(a); where procedural rules more directly guide the evaluation of claims, see Fed. Rule Bkrtcy. Proc. 3001(c)(3)(A); and where the claims resolution process is "generally a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit," *In re Gatewood*, 533 B. R. 905, 909.

Also unpersuasive is Johnson's argument that there is no legitimate reason for allowing a practice like this one that risks harm to the debtor. The bankruptcy system treats untimeliness as an affirmative defense and normally gives the trustee the burden of investigating claims to see if one is stale. And, at least on occasion, the assertion of even a stale claim can benefit the debtor.

More importantly, a change in the simple affirmative-defense approach, carving out an exception, would require defining the exception's boundaries. Does it apply only where a claim's staleness appears on the face of the proof of claim? Does it apply to other affirmative defenses or only to the running of the limitations period? Neither the Fair Debt Collection Practices Act nor the Bankruptcy Code indicates that Congress intended an ordinary civil court applying the Act to determine answers to such bankruptcy-related questions. The Act and the Code have different purposes and structural features. The Act seeks to help consumers by preventing consumer bankruptcies in the first place, while the Code creates and maintains the "delicate balance of a debtor's protections and obligations," *Kokoszka* v. *Belford*, 417 U. S. 642, 651. Applying the Act in this context would upset that "delicate balance."

Contrary to the argument of the United States, the promulgation of Bankruptcy Rule 9011 did not resolve this issue. Pp. 5–10.

823 F. 3d 1334, reversed.

Breyer, J., delivered the opinion of the Court, in which Roberts, C. J., and Kennedy, Thomas, and Alito, JJ., joined. Sotomayor, J., filed a dissenting opinion, in which Ginsburg and Kagan, JJ., joined. Gorsuch, J., took no part in the consideration or decision of the case.

# Opinion

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

SUPREME COURT OF THE UNITED STATES

———————

No. 16–348

———————

MIDLAND FUNDING, LLC, PETITIONER *v.* ALEIDA JOHNSON

on writ of certiorari to the united states court of appeals for the eleventh circuit

[May 15, 2017]

JUSTICE BREYER delivered the opinion of the Court.

The Fair Debt Collection Practices Act, 91 Stat. 874, 15 U. S. C. §1692 *et seq.*, prohibits a debt collector from asserting any "false, deceptive, or misleading representation," or using any "unfair or unconscionable means" to collect, or attempt to collect, a debt, §§1692e, 1692f. In this case, a debt collector filed a written statement in a Chapter 13 bankruptcy proceeding claiming that the debtor owed the debt collector money. The statement made clear, however, that the 6-year statute of limitations governing collection of the claimed debt had long since run. The question before us is whether the debt collector's filing of that statement falls within the scope of the aforementioned provisions of the Fair Debt Collection Practices Act. We conclude that it does not.

## I

In March 2014, Aleida Johnson, the respondent, filed for personal bankruptcy under Chapter 13 of the Bankruptcy Code (or Code), 11 U. S. C. §1301 *et seq*, in the Federal District Court for the Southern District of Alabama. Two months later, Midland Funding, LLC, the petitioner, filed  a "proof of claim," a written statement

asserting that Johnson owed Midland a credit-card debt of $1,879.71. The statement added that the last time any charge appeared on Johnson's account was in May 2003, more than 10 years before Johnson filed for bankruptcy. The relevant statute of limitations is six years. See Ala. Code §6–2–34 (2014). Johnson, represented by counsel, objected to the claim; Midland did not respond to the objection; and the Bankruptcy Court disallowed the claim.

Subsequently, Johnson brought this lawsuit against Midland seeking actual damages, statutory damages, attorney's fees, and costs for a violation of the Fair Debt Collection Practices Act. See 15 U. S. C. §1692k. The District Court decided that the Act did not apply and therefore dismissed the action. The Court of Appeals for the Eleventh Circuit disagreed and reversed the District Court. 823 F. 3d 1334 (2016). Midland filed a petition for certiorari, noting a division of opinion among the Courts of Appeals on the question whether the conduct at issue here is "false," "deceptive," "misleading," "unconscionable," or "unfair" within the meaning of the Act. Compare *ibid.* (finding the Fair Debt Collection Practices Act applicable) with *In re Dubois*, 834 F. 3d 522 (CA4 2016) (finding the Act inapplicable); *Owens* v. *LVNV Funding, LLC*, 832 F. 3d 726 (CA7 2016) (same); and *Nelson* v. *MidlandCredit Management, Inc.*, 828 F. 3d 749 (CA8 2016) (same). We granted the petition. We now reverse the Court of Appeals.

## II

Like the majority of Courts of Appeals that have considered the matter, we conclude that Midland's filing of a proof of claim that on its face indicates that the limitations period has run does not fall within the scope of any of the five relevant words of the Fair Debt Collection Practices Act. We believe it reasonably clear that Midland's proof of claim was not "false, deceptive, or misleading." Midland's proof of claim falls within the Bankruptcy Code's definition of the term "claim." A "claim" is a "right to payment." 11 U. S. C. §101(5)(A). State law usually determines whether a person has such a right. See *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.*, 549 U. S. 443, 450–451 (2007). The relevant state law is the law of Alabama. And Alabama's law, like the law of many States, provides that a creditor has the right to payment of a debt even after the limitations period has expired. See *Ex parte HealthSouth Corp.*, 974 S. 2d 288, 296 (Ala. 2007) (passage of time extinguishes remedy but the right remains); see also, *e.g., Sallaz* v. *Rice*, 161 Idaho 223, ___, 384 P. 3d 987, 992–993 (2016) (similar); *Notte* v. *Merchants Mut. Ins. Co.*, 185 N. J. 490, 499–500, 888 A. 2d 464, 469 (2006) (similar); *Potterton* v. *Ryland Group, Inc.*, 289 Md. 371, 375–376, 424 A. 2d 761, 764 (1981) (similar); *Summers* v. *Connolly*, 159 Ohio St. 396, 400–402, 112 N. E. 2d 391, 394 (1953) (similar); *DeVries* v. *Secretary of State*, 329 Mich. 68, 75, 44 N. W. 2d 872, 876 (1950) (similar); *Fleming* v. *Yeazel*, 379 Ill. 343, 344–346, 40 N. E. 2d 507, 508 (1942) (similar); *Fidelity & Cas. Co. of N. Y.* v. *Lackland*, 175 Va.

178, 185–187, 8 S. E. 2d 306, 309 (1940) (similar); *Insurance Co.* v. *Dunscomb*, 108 Tenn. 724, 728–731, 69 S. W. 345, 346 (1902) (similar); but see, *e.g.,* Miss. Code Ann. §15–1–3(1) (2012) (expiration of the limitations period extinguishes the remedy and the right); Wis. Stat. §893.05 (2011–2012) (same).

Johnson argues that the Code's word "claim" means "enforceable claim." She notes that this Court once referred to a bankruptcy "claim" as "an enforceable obligation." *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 559 (1990). And, she concludes, Midland's "proof of claim" was false (or deceptive or misleading) because its "claim" was not enforceable. Brief for Respondent 22; Brief for United States as *Amicus Curiae* 18– 20 (making a similar argument).

But we do not find this argument convincing. The word "enforceable" does not appear in the Code's definition of "claim." See 11 U. S. C. §101(5). The Court in *Davenport* likely used the word "enforceable" descriptively, for that case involved an enforceable debt. 495 U. S., at 559. And it is difficult to square Johnson's interpretation with our later statement that "Congress intended . . . to adopt the broadest available definition of 'claim.' " *Johnson* v. *Home State Bank*, 501 U. S. 78, 83 (1991).

It is still more difficult to square Johnson's interpretation with other provisions of the Bankruptcy Code. Section 502(b)(1) of the Code, for example, says that, if a "claim" is "unenforceable," it will be disallowed. It does not say that an "unenforceable" claim is not a "claim." Similarly, §101(5)(A) says that a "claim" is a "right to payment," "whether or not such right is . . . fixed, *contingent*, . . . [or] *disputed*." If a contingency does not arise, or if a claimant loses a dispute, then the claim is unenforce- able. Yet this section makes clear that the unenforceable claim is nonetheless a "right to payment," hence a "claim," as the Code uses those terms.

Johnson looks for support to other provisions that govern bankruptcy proceedings, including §502(a) of the Bankruptcy Code, which states that a claim will be allowed in the absence of an objection, and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, which states that a properly filed "proof of claim . . . shall constitute prima facie evidence of the validity and amount of the claim." But these provisions do not discuss the scope of the term "claim." Rather, they restate the Bankruptcy Code's system for determining whether a claim will be allowed. Other provisions make clear that the running of a limitations period constitutes an affirmative defense, a defense that the debtor is to assert after a creditor makes a "claim." §§502, 558. The law has long treated unen forceability of a claim (due to the expiration of the limitations period) as an affirmative defense. See, *e.g.,* Fed. Rule Civ. Proc. 8(c)(1); 13 Encyclopaedia of Pleading and Practice 200 (W. McKinney ed. 1898). And we see nothing misleading or deceptive in the filing of a proof of claim that, in effect, follows the Code's similar system.

Indeed, to determine whether a statement is misleading normally "requires consideration of the legal sophistication of its audience." *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 383, n. 37 (1977). The audience in Chapter 13 bankruptcy cases includes a trustee, 11 U. S. C. §1302(a), who must examine proofs of claim and, where appropriate, pose an objection, §§704(a)(5), 1302(b)(1) (including any timeliness objection, §§502(b)(1), 558). And that trustee is likely to understand that, as the Code says, a proof of claim is a statement by the creditor that he or she has a right to payment subject to disallowance (including disallowance based upon, and following, the trustee's objection for untimeliness). §§101(5)(A), 502(b), 704(a)(5), 1302(b)(1). (We do not address the appropriate standard in ordinary civil litigation.)

## III

Whether Midland's assertion of an obviously time-barred claim is "unfair" or "unconscionable" (within the terms of the Fair Debt Collection Practices Act) presents a closer question. First, Johnson points out that several lower courts have found or indicated that, in the context of an ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time barred is "unfair." See, *e.g.*, *Phillips* v. *Asset Acceptance, LLC*, 736 F. 3d 1076, 1079 (CA7 2013) (holding as much); *Kimber* v. *Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (MD Ala. 1987) (same); *Huertas* v. *Galaxy Asset Management*, 641 F. 3d 28, 32–33 (CA3 2011) (indicating as much); *Castro* v. *Collecto, Inc.*, 634 F. 3d 779, 783 (CA5 2011) (same); *Freyermuth* v. *Credit Bureau Servs., Inc.*, 248 F. 3d 767, 771 (CA8 2001) (same).

We are not convinced, however, by this precedent. It considers a debt collector's assertion *in a civil suit* of a claim known to be stale. We assume, for argument's sake, that the precedent is correct in that context (a matter this Court itself has not decided and does not now decide). But the context of a civil suit differs significantly from the present context, that of a Chapter 13 bankruptcy proceeding. The lower courts rested their conclusions upon their concern that a consumer might unwittingly repay a time-barred debt. Thus the Seventh Circuit pointed out that " 'few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts.' " *Phillips, supra,* at 1079 (quoting *Kimber, supra,* at 1487). The " 'passage of time,' " the Circuit wrote, " 'dulls the consumer's memory of the circumstances and validity of the debt' " and the consumer may no longer have " 'personal records.' " 736 F. 3d, at 1079 (quoting *Kimber, supra,* at 1487). Moreover, a consumer might pay a stale debt simply to avoid the cost and embarrassment of suit. 736 F. 3d, at 1079.

These considerations have significantly diminished force in the context of a Chapter 13 bankruptcy. The consumer initiates such a proceeding, see 11 U. S. C. §§301, 303(a), and consequently the consumer is not likely to pay a stale claim just to avoid going to court. A knowledgeable trustee is available. See §1302(a). Procedural bankruptcy rules more directly guide the evaluation of claims. See Fed. Rule Bkrtcy. Proc. 3001(c)(3)(A); Advisory Committee's Notes on Rule 3001–2011 Amdt., 11 U. S. C. App., p. 678. And, as the Eighth Circuit Bankruptcy Appellate Panel put it, the claims resolution process is "generally a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit." *In re Gatewood*, 533 B. R. 905, 909 (2015); see also, *e.g.,* 11 U. S. C. §502 (out lining generally the claims resolution process). These features of a Chapter 13 bankruptcy proceeding make it considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance.

Second, Johnson argues that the practice at least risks harm to the debtor and that there is not "a single legitimate reason" for allowing this kind of behavior. Brief for Respondent 32. Would it not be obviously "unfair," she asks, for a debt collector to adopt a practice of buying up stale claims cheaply and asserting them in bankruptcy knowing they are stale and hoping for careless trustees? The United States, supporting Johnson, adds its view that the Federal Rules of Bankruptcy Procedure make the practice open to sanction, and argues that sanctionable conduct is unfair conduct. Brief for United States as *Amicus Curiae* 20. See Fed. Rule Bkrtcy. Proc. 9011(b)(2) (sanction possible if party violates the Rule that by "presenting to the [bankruptcy] court" any "paper," a "party is certifying that to the best of" his or her "knowledge, . . . the claims . . . therein are warranted by existing law").

We are ultimately not persuaded by these arguments. The bankruptcy system, as we have already noted, treats untimeliness as an affirmative defense. The trustee normally bears the burden of investigating claims and pointing out that a claim is stale. See *supra,* at 4–5. Moreover, protections available in a Chapter 13 bankruptcy proceeding minimize the risk to the debtor. See *supra,* at 6. And, at least on occasion, the assertion of even a stale claim can benefit a debtor. Its filing and disallowance "discharge[s]" the debt. 11 U. S. C. §1328(a). And that discharge means that the debt (even if unenforceable) will not remain on a credit report potentially affecting an individual's ability to borrow money, buy a home, and perhaps secure employment. See 15 U. S. C. §1681c(a)(4) (debt may remain on a credit report for seven years); cf. Ala. Code §6–2–34 (6- year statute of limitations); Md. Cts. & Jud. Proc. Code Ann. §5–101 (2013) (3-year statute of limitations); cf. 16 CFR pt. 600, App. §607, ¶6 (1991) (a credit report may include discharged debt only if "the debt [is reported] as having a zero balance due to

reflect the fact that the consumer is no longer liable for the discharged debt"); FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 66 (2011) (similar).

More importantly, a change in the simple affirmative-defense approach, carving out an exception, itself would require defining the boundaries of the exception. Does it apply only where (as Johnson alleged in the complaint) a claim's staleness appears "on [the] face" of the proof of claim? Does it apply to other affirmative defenses or only to the running of a limitations period?

At the same time, we do not find in either the Fair Debt Collection Practices Act or the Bankruptcy Code good reason to believe that Congress intended an ordinary civil court applying the Act to determine answers to these bankruptcy-related questions. The Act and the Code have different purposes and structural features. The Act seeks to help consumers, not necessarily by closing what Johnson and the United States characterize as a loophole in the Bankruptcy Code, but by preventing consumer bankruptcies in the first place. See, e.g., 15 U. S. C. §1692(a) (recognizing the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices [which] contribute to the number of personal bankruptcies"); see also §1692(b) ("Existing laws and procedures . . . are inadequate to protect consumers"); §1692(e) (statute seeks to "eliminate abusive debt collection practices"). The Bankruptcy Code, by way of contrast, creates and maintains what we have called the "delicate balance of a debtor's protections and obligations." Kokoszka v. Belford, 417 U. S. 642, 651 (1974).

To find the Fair Debt Collection Practices Act applicable here would upset that "delicate balance." From a sub- stantive perspective it would authorize a new significant bankruptcy-related remedy in the absence of language in the Code providing for it. Administratively, it would permit postbankruptcy litigation in an ordinary civil court concerning a creditor's state of mind—a matter often hard to determine. See 15 U. S. C. §1692k(c) (safe harbor for any debt collector who "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error"). Procedurally, it would require creditors (who assert a claim) to investigate the merits of an affirmative defense (typically the debtor's job to assert and prove) lest the creditor later be found to have known the claim was untimely. The upshot could well be added complexity, changes in settlement incentives, and a shift from the debtor to the creditor the obligation to investigate the staleness of a claim.

Unlike the United States, we do not believe that the Advisory Committee on Rules of Bankruptcy Procedure settled the issue when it promulgated Bankruptcy Rule 9011. The Committee, in considering amendments to the Federal Rules of Bankruptcy Procedure in 2009, specifically rejected a proposal that would have

required a creditor to certify that there is no valid statute of limitations defense. See Agenda Book for Meeting 86–87 (Mar. 26–27, 2009). It did so in part because the working group did not want to impose an affirmative obligation on a creditor to make a prefiling investigation of a potential time-bar defense. *Ibid.* In rejecting that proposal, the Committee did note that Rule 9011 imposes a general "obligation on a claimant to undertake an inquiry reasonable under the circumstances to determine . . . that a claim is warranted by existing law and that factual contentions have evidentiary  support," and to certify as much on the proof of claim. *Id.*, at 87. The Committee also acknowledged, however, that this requirement would "not addres[s] the statute of limitation issue," but would only ensure "the accuracy of the information provided." *Ibid.*

We recognize that one Bankruptcy Court has held that filing a time-barred claim without a prefiling investigation of a potential time-bar defense merits sanctions under Rule 9011. *In re Sekema*, 523 B. R. 651, 654 (Bkrtcy. Ct. ND Ind. 2015). But others have held to the contrary. See, *e.g., In re Freeman*, 540 B. R. 129, 143–144 (Bkrtcy. Ct. ED Pa. 2015); *In re Jenkins*, 538 B. R. 129, 134–136 (Bkrcty. Ct. ND Ala. 2015); *In re Keeler*, 440 B. R. 354, 366–369 (Bkrtcy. Ct. ED Pa. 2009); see also *In re Andrews*, 394 B. R. 384, 387–388 (Bkrtcy. Ct. EDNC 2008) (recognizing that "[m]any courts have . . . found that sanctions [under Rule 9011] were not warranted for filing stale claims").

These circumstances, taken together, convince us that we cannot find the practice at issue here "unfair" or "unconscionable" within the terms of the Fair Debt Collection Practices Act.

## IV

For these reasons, we conclude that filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act. The judgment of the Eleventh Circuit is reversed.

It is so ordered.

JUSTICE GORSUCH took no part in the consideration or decision of this case.

**TOP**

# Dissent

SUPREME COURT OF THE UNITED STATES

MIDLAND FUNDING, LLC, PETITIONER *v.*ALEIDA JOHNSON

on writ of certiorari to the united states court of appeals for the eleventh circuit

[May 15, 2017]

Justice Sotomayor, with whom Justice Ginsburg and Justice Kagan join, dissenting.

The Fair Debt Collection Practices Act (FDCPA or Act) prohibits professional debt collectors from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" and from "us[ing] unfair or unconscionable means to collect" a debt. 15 U. S. C. §§1692e, 1692f. The Court today wrongfully holds that a debt collector that knowingly attempts to collect a time-barred debt in bankruptcy proceedings has violated neither of these prohibitions.

Professional debt collectors have built a business out of buying stale debt, filing claims in bankruptcy proceedings to collect it, and hoping that no one notices that the debt is too old to be enforced by the courts. This practice is both "unfair" and "unconscionable." I respectfully dissent from the Court's conclusion to the contrary.[1]

# I

Americans owe trillions of dollars in consumer debt to creditors—credit card companies, schools, and car dealers, among others. See Fed. Reserve Bank of N. Y., Quarterly Report on Household Debt and Credit 3 (2017). Most people will repay their debts, but some cannot do so. The debts they do not pay are increasingly likely to end up in the hands of professional debt collectors— companies whose business it is to collect debts that are owed to other companies. See Consumer Financial Protection Bur., Fair Debt Collection Practices Act: Annual Report 2016, p. 8 (CFPB Report). Debt collection is a lucrative and growing industry. Last year, the Nation's 6,000 debt collection agencies earned over $13 billion in revenue. *Ibid.*

Although many debt collectors are hired by creditors to work on a third-party basis, more and more collectors also operate as "debt buyers"—purchasing debts from creditors outright and attempting to collect what they can, with the profits going to their own accounts.[2] See FTC, The Structure and Practices of the Debt Buying Industry 11–12 (2013) (FTC Report); CFPB Report 10. Debt buyers now hold hundreds of billions of dollars in consumer debt; indeed, a study conducted by the Federal Trade Commission (FTC) in 2009 found that nine of the leading debt buyers had purchased over $140 billion in debt just in the previous three years. FTC Report, at i–ii, T–3 (Table 3).

Because creditors themselves have given up trying to collect the debts they sell to debt buyers, they sell those debts for pennies on the dollar. *Id.,* at 23. The older the debt, the greater the discount: While debt buyers pay close to eight cents per dollar for debts under three years old, they pay as little as two cents per dollar for debts greater than six years old, and "effectively nothing" for debts greater than 15 years old. *Id.,* at 23–24. These prices reflect the basic fact that older debts are harder to collect. As time passes, consumers move or forget that they owe the debts; creditors have more trouble documenting the debts and proving their validity; and debts begin to fall within state statutes of limitations—time limits that "operate to bar a plaintiff's suit" once passed. *CTS Corp.* v. *Waldburger*, 573 U. S. ___, ___ (2014) (slip op., at 5). Because a creditor (or a debt collector) cannot enforce a time-barred debt in court, the debt is inherently worth very little indeed.

But statutes of limitations have not deterred debt buyers. For years, they have filed suit in state courts—often in small-claims courts, where formal rules of evidence do not apply—to collect even debts too old to be enforced by those courts.[3] See Holland, The One Hundred Billion Dollar Problem in Small-Claims Court, 6 J. Bus. & Tech. L. 259, 261 (2011). Importantly, the debt buyers' only hope in these cases is that consumers will fail either to invoke the statute of limitations or to respond at all: In most States the statute of limitations is an affirmative defense, meaning that a consumer must appear in court and raise it in order to dismiss the suit. See *ante,* at 4–5 (majority opinion). But consumers do fail to defend themselves in court—in fact, according to the FTC, over 90% fail to appear at all. FTC Report 45. The result is that debt buyers have won "billions of dollars in default judgments" simply by filing suit and betting that consumers will lack the resources to respond. Holland, *supra,* at 263.

The FDCPA's prohibitions on "misleading" and "unfair" conduct have largely beaten back this particular practice. Every court to have considered the question has held that a debt collector that knowingly files suit in court to collect a time-barred debt violates the FDCPA. See *Phillips* v. *Asset Acceptance, LLC,* 736 F. 3d 1076, 1079 (CA7 2013); *Kimber* v. *Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (MD Ala. 1987); see also *ante,* at 5–6 (majority opinion) (citing other cases).

In 2015, petitioner and its parent company entered into a consent decree with the Government prohibiting them from filing suit to collect time-barred debts and ordering them to pay $34 million in restitution. See Consent Order in *In re Encore Capital Group, Inc.*, No. 2015–CFPB–0022 (Sept. 9, 2015), pp. 38, 46. And the leading trade association has now adopted a resolution barring the practice. See Brief for DBA International, Inc., as *Amicus Curiae* 2–3.

Stymied in state courts, the debt buyers have now turned to a new forum: bankruptcy courts. The same debt buyers that for years filed thousands of lawsuits in state courts across the country have begun to do the same thing in bankruptcy courts—specifically, in cases governed by Chapter 13 of the Bankruptcy Code, which allows consumers earning regular incomes to restructure their debts and repay as many as they can over a period of several years. See 8 Collier on Bankruptcy ¶1300.01 (A. Resnick & H. Sommer eds., 16th ed. 2016). As in ordinary civil cases, a debtor in a Chapter 13 bankruptcy proceeding is entitled to have dismissed any claim filed against his estate that is barred by a statute of limitations. See 11 U. S. C. §558. As in ordinary civil cases, the statute of limitations is an affirmative defense, one that must be raised by either the debtor or the trustee of his estate before it is honored. §§502, 558. And so—just as in ordinary civil cases—debt collectors may file claims in bankruptcy proceedings for stale debts and hope that no one notices that they are too old to be enforced.

And that is exactly what the debt buyers have done. As a wide variety of courts and commentators have observed, debt buyers have "deluge[d]" the bankruptcy courts with claims "on debts deemed unenforceable under state statutes of limitations." *Crawford* v. *LVNV Funding, LLC*, 758 F. 3d 1254, 1256 (CA11 2014); see also *In re Jenkins*, 456 B. R. 236, 239, n. 2 (Bkrtcy. Ct. EDNC 2011) (noting a "plague of stale claims"); Brief for National Association of Consumer Bankruptcy Attorneys et al. as *Amici Curiae* 9 (noting study describing "hundreds of thousands of proofs of claim asserting hundreds of millions of dollars of consumer indebtedness, all in a single year"). This practice has become so widespread that the Government sued one debt buyer last year "to address [its] systemic abuse of the bankruptcy process"—including a "business model" of "knowingly and strategically" filing thousands of claims for time-barred debt. Complaint in *In re Freeman-Clay* v. *Resurgent Capital Servs., L. P.*, No. 14–41871 (Bkrtcy. Ct. WD Mo.), ¶¶1, 35 (*Resurgent* Complaint). This practice, the Government explained, "manipulates the bankruptcy process by systematically shifting the burden" to trustees and debtors to object even to "frivolous claims"—especially given that filing an objection is costly, time consuming, and easy to overlook. *Id.*, at ¶¶35, 43–44.

# II

The FDCPA prohibits professional debt collectors from engaging in "unfair" and "unconscionable" practices. 15 U. S. C. §1692f.[4] Filing a claim in bankruptcy court for debt that a collector knows to be time barred—like filing a lawsuit in a court to collect such a debt—is just such a practice.

## A

Begin where the debt collectors themselves began: with their practice of filing suit in ordinary civil courts to collect debts that they know are time barred. Every court to have considered this practice holds that it violates the FDCPA. There is no sound reason to depart from this conclusion.

Statutes of limitations "are not simply technicalities." *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 487 (1980). They reflect strong public-policy determinations that "it is unjust to fail to put [an] adversary on notice to defend within a specified period of time." *United States* v. *Kubrick*, 444 U. S. 111, 117 (1979). And they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers* v. *Railway Express Agency, Inc.*, 321 U. S. 342, 348–349 (1944). Such concerns carry particular weight in the context of small-dollar consumer debt collection. As one thoughtful opinion explains:

"Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense . . . ." *Kimber*, 668 F. Supp., at 1487.

Debt buyers' efforts to pursue stale debt in ordinary civil litigation may also entrap debtors into forfeiting their time defenses altogether. When a debt collector sues or threatens to sue to collect a debt, many consumers respond by offering a small partial payment to forestall suit. In many States, a consumer who makes an offer like this has—unbeknownst to him—forever given up his ability to claim the debt is unenforceable. That is because in most States a consumer's partial payment on a time-barred debt—or his promise to resume payments on such a debt—will restart the statute of limitations. FTC Report 47; see, *e.g., Young* v. *Sorenson*, 47 Cal. App. 3d 911, 914, 121 Cal. Rptr. 236, 237 (1975) (" 'The theory on which this is based is that the payment is an acknowledgement on the existence

of the indebtedness which raises an implied promise to continue the obligation and to pay the balance' "). Debt collectors' efforts to entrap consumers in this way have no place in honest business practice.

## B

The same dynamics are present in bankruptcy proceedings. A proof of claim filed in bankruptcy court represents the debt collector's belief that it is entitled to payment, even though the debt should not be enforced as a matter of public policy. The debtor's claim will be allowed, and will be incorporated in a debtor's payment plan, unless the debtor or his trustee objects. But such objections require ordinary and unsophisticated people (and their overworked trustees) to be on guard not only against mistaken claims but also against claims that debt collectors know will fail under law if an objection is raised. Debt collectors do not file these claims in good faith; they file them hoping and expecting that the bankruptcy system will fail. Such a practice is "unfair" and "unconscionable" in violation of the FDCPA.

The Court disagrees. But it does so on narrow grounds. To begin with, the Court does not hold that the Bankruptcy Code altogether displaces the FDCPA, leaving it with no role to play in bankruptcy proceedings. Such a conclusion would be wrong. Although the Code and the FDCPA "have different purposes and structural features," *ante,* at 8, the Court has held that Congress, in passing the FDCPA's predecessor, did so on the understanding that "the provisions and the purposes" of the two statutes were intended to "coexist." *Kokoszka* v. *Belford*, 417 U. S. 642, 650 (1974). Although petitioner suggests that the FDCPA is best read "to have no application to [a] debt collector's conduct" in a bankruptcy proceeding, Brief for Petitioner 41, the majority declines its invitation to adopt such a sweeping rule.[5]

Nor does the majority take a position on whether a debt collector violates the FDCPA by filing suit in an ordinary court to collect a debt it knows is time barred. *Ante,* at 6. Instead, the majority concludes, even assuming that such a practice would violate the FDCPA, a debt collector does not violate the Act by doing the same thing in bankruptcy proceedings. Bankruptcy, the majority argues, is different. True enough. But none of the distinctions that the majority identifies bears the weight placed on it.

First, the majority contends, structural features of the bankruptcy process reduce the risk that a stale debt will go unnoticed and thus be allowed. *Ante,* at 6–7. But there is virtually no evidence that the majority's theory holds true in practice. The majority relies heavily on the presence of a bankruptcy trustee, appointed to act on the debtor's behalf and empowered to (among other things) object to claims that he believes lack merit. See 11 U. S. C. §§704(a)(5), 1302(b). In the majority's view, the trustee's gatekeeping role makes it "considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance,

objection, and disallowance." *Ante,* at 7. The problem with the majority's *ipse dixit* is that everyone with actual experience in the matter insists that it is false. The Government, which oversees bankruptcy trustees, tells us that trustees "cannot realistically be expected to identify every time-barred . . . claim filed in every bankruptcy." Brief for United States as *Amicus Curiae* 25–26; see also *Resurgent* Complaint ¶43 ("Filing objections to all of [one collector]'s unenforceable claims would clog the docket of this Court and other courts with objections to frivolous claims"). The trustees themselves (appearing here as *amici curiae*) agree, describing the practice as "wasteful" and "exploit[ative]." Brief for National Association of Chapter Thirteen Trustees as *Amicus Curiae* 12. And courts across the country recognize that Chapter 13 trustees are struggling under a "deluge" of stale debt. *Crawford*, 758 F. 3d, at 1256.

Second, the other features of the bankruptcy process that the majority believes will serve as a backstop against frivolous claims are even less likely to do so in practice. The majority implies that a person who files for bankruptcy is more sophisticated than the average consumer debtor because the initiation of bankruptcy is a choice made by a debtor. *Ante,* at 6. But a person who has filed for bankruptcy will rarely be in such a superior position; he has, after all, just declared that he is unable to meet his financial obligations and in need of the assistance of the courts. It is odd to speculate that such a person is better situated to monitor court filings and lodge objections than an ordinary consumer. The majority also suggests that the rules of bankruptcy help "guide the evaluation of claims." *Ibid.* But the rules of bankruptcy in fact facilitate the *allowance* of claims: Claims are automatically allowed and made part of a plan unless an objection is made. See 11 U. S. C. §502(a). A debtor is arguably more vulnerable in bankruptcy—not less—to the oversights that the debt buyers know will occur.

Finally, the majority suggests, in some cases a consumer will actually *benefit* if a claim for an untimely debt is filed. *Ante,* at 7–8. If such a claim is filed but disallowed, the majority explains, the debt will eventually be discharged, and the creditor will be barred from collecting it. See §1328(a). Here, too, practice refutes the majority's rosy portrait of these proceedings. A debtor whose trustee does not spot and object to a stale debt will find no comfort in the knowledge that *other* consumers with more attentive trustees may have their debts disallowed and discharged. Moreover, given the high rate at which debtors are unable to fully pay off their debts in Chapter 13 proceedings, see Porter, The Pretend Solution: An Empirical Study of Bankruptcy Outcomes, 90 Texas L. Rev. 103, 111–112 (2011), most debtors who fail to object to a stale claim will end up worse off than had they never entered bankruptcy at all: They will make payments on the stale debts,

thereby resuscitating them, see *supra*, at 6–7, and may thus walk out of bankruptcy court owing more to their creditors than they did when they entered it. There is no benefit to  anyone in such a proceeding—except the debt collectors.

\*　　\*　　\*

It does not take a sophisticated attorney to understand why the practice I have described in this opinion is unfair. It takes only the common sense to conclude that one should not be able to profit on the inadvertent inattention of others. It is said that the law should not be a trap for the unwary. Today's decision sets just such a trap.

I take comfort only in the knowledge that the Court's decision today need not be the last word on the matter. If Congress wants to amend the FDCPA to make explicit what in my view is already implicit in the law, it need only say so.

I respectfully dissent.

# Notes

1 Because I believe the practice at issue here is "unfair" and "unconscionable," and thus violates 15 U. S. C. §1692f, I do not address the Court's conclusion that the practice is not "false, deceptive, or misleading" in violation of §1692e.

2 A case pending before this Court, *Henson* v. *Santander Consumer USA Inc.*, No. 16–349, asks whether a certain kind of debt buyer is a "debt collector" under the FDCPA. Midland does not dispute that it is a debt collector under the Act.

3 Petitioner's parent alone filed 245,000 lawsuits in 2009. See Silver-Greenberg, Boom in Debt Buying Fuels Another Boom—in Lawsuits, Wall Street Journal, Nov. 29, 2010, pp. A1, A16. Petitioner itself filed 110 lawsuits on just one date in a single state court. *Id.,* at A1.

4 This Court has not had occasion to construe the terms "unfair" and "unconscionable" in §1692f. The FDCPA's legislative history suggests that Congress intended these terms as a backstop that would enable "courts, where appropriate, to proscribe other improper conduct . . . not specifically addressed" by the statute. S. Rep. No. 95–382, p. 4 (1977). Courts have construed these terms, consistent with other federal and state statutes that employ them, to borrow from equitable and common-law traditions. See, *e.g., LeBlanc* v. *Unifund CCR Partners*, 601 F. 3d 1185, 1200–1201 (CA11 2010) (*per curiam*); *Beler* v. *Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F. 3d 470, 473–474 (CA7 2007).

5 The majority does lean heavily on its fear that, were we to conclude that the FDCPA bars the practice at issue, we would be licensing "postbankruptcy litigation in an ordinary civil court" concerning matters best left to bankruptcy courts. *Ante,* at 9. But to do so would not, as the majority suggests, "upset [the] 'delicate balance' " struck by the Code. *Ibid.* (quoting *Kokoszka* v. *Belford*, 417 U. S., at 651). For one, nothing requires a debtor to engage in satellite litigation in order to sue a debt collector under the FDCPA; a debtor can easily file an adversary proceeding asserting an FDCPA claim with the bankruptcy court itself, and in many cases will be better served by doing so. See, *e.g., Simon* v. *FIA Card Servs., N. A.*, 732 F. 3d 259, 263 (CA3 2013). Nor is there any risk that finding the FDCPA applicable here will authorize bankruptcy courts (or, for that matter, civil courts) to engage in novel and unfettered inquiries into "a creditor's state of mind." *Ante,* at 9. Both Fed. Rule Civ. Proc. 11 and its bankruptcy counterpart, Fed. Rule Bkrtcy. Proc. 9011, authorize a court to impose sanctions on parties who willfully file meritless claims (a category that includes the debt buyers here, see *In re Sekema*, 523 B. R. 651, 654–655 (Bkrtcy. Ct. ND Ind. 2015)). So there is nothing new about the inquiry that courts would be required to undertake; it is no different than analyses they conduct every day.

🏛 Supreme Court Toolbox

- about
- Supreme Court collection
- liibulletin previews
- subscribe

# Certificate of Service

**UNDER PENALTY OF PERJURY, I CERTIFY** that a copy of the foregoing was provided by US mail to:

1. C/O Nationstar Mortgage, LLC Attention BK Department, PO Box 619096, Dallas TX 75261- 9741

   Telephone (877) 343-5602

   Attorney for Creditor: Gross Polowy, LLC

   1773 Wehrie Drive, Suite 100

   Williamsville, New York 14221

2. Frost (SDNY) Thomas

Chapter 13 Trustee, PO Box 613707 Memphis TN 38101- 3707

Orange County, New York

Dated: June 26, 2023

*Emanuel Archibald*

Emanuel Archibald

On this ___26th___ day of ___June___ 2023

BEFORE ME, personally appeared EMANUEL ARCHIBALD who being by me.

first duly sworn and identified in accordance with New York law did execute the

foregoing in my presence this ___26th___ day of ___June___ 2023

Notary Public

NICOLE YOUNG
Notary Public, State of New York
No. 01YO6438927
Qualified in Orange County
Commission Expires Aug. 22, 2026

My Commission expires: August, 22, 2026